NO. 07-08-0165-CV

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL A

JUNE 30, 2009
_____

VERIZON CORPORATE SERVICES CORP. F/D/B/A
VERIZON LOGISTICS, APPELLANT

V.

KAN-PAK SYSTEMS, INC., APPELLEE
_____

FROM THE 96TH DISTRICT COURT OF TARRANT COUNTY;

NO. 96-223905-07; HONORABLE JEFF WALKER, JUDGE
_____

Before CAMPBELL and HANCOCK and PIRTLE, JJ.

**OPINION**

Appellant, Verizon Corporate Services Corp., appeals the granting of summary judgment in favor of appellee, Kan-Pak Systems, Inc. The judgment awarded Kan-Pak actual damages in the amount of $97,464, attorney fees of $8,000, court costs, and post-judgment interest at the rate of 8.25 percent per annum. Verizon further contends that the trial court erred in denying Verizon's motion for summary judgment. We reverse and remand.

Background

In 1999, Verizon hired GLM to manage and oversee waste management at Verizon's Texas facilities. As part of the agreement by which Verizon hired GLM, Verizon authorized GLM to review its current waste management and to negotiate leases with vendors for waste management services. However, Verizon expressly denied GLM the authority to enter into contracts on Verizon's behalf. In addition, Verizon supplied GLM with a letter of authorization to present to potential vendors that specified that GLM was authorized to "act on behalf of Verizon to obtain information on waste removal and recycling" and to "negotiate rates, service levels, and commodity rebates for the benefit of Verizon." However, this letter also expressly provided that, "GLM is not authorized to enter into any agreement for service(s). Any negotiated rates, services levels, and commodity rebates will be subject to review and final approval by [Verizon]."

Between July 1999 and June 2002, a GLM employee negotiated and entered into five rental contracts with Kan-Pak. According to these contracts, the GLM employee entered into these contracts on behalf of Verizon. The five rental contracts were nearly identical in their terms. Of particular relevance to the present appeal, each rental contract was for a term of 60 months and contained an automatic renewal clause that would renew the contracts for an additional 60 month period unless written notice of termination was received by the other party no less than 60 days prior to the expiration of the current term.

Kan-Pak supplied compactors to the five Verizon facilities covered under the separate rental contracts. Either GLM or Verizon paid the monthly rental payments called

2

for under the rental contracts until September 2006. From September 2002 until September 2006, Verizon received copies of all invoices covered by each of the five rental contracts. In September 2004, Verizon contacted Kan-Pak about two of the locations covered by the rental contracts requesting that half of the equipment be removed and that the corresponding billing amount be decreased to reflect this change. Kan-Pak complied with this request.

In August 2006, Verizon informed Kan-Pak that it should submit its billing to Allied Waste. Kan-Pak obliged and began to receive payments from Allied on four of the five rental contracts.[1] The reason for this change was that Verizon had terminated its waste management consultation relationship with GLM and had retained Allied to perform this task. As part of reviewing Verizon's waste management, Allied discovered the rental contracts that GLM had entered into with Kan-Pak. In December 2006, Allied forwarded a copy of these rental contracts to Verizon. Verizon contends that the receipt of these contracts in mid-December 2006 was when they became aware that such contracts existed and was the first time that they saw the terms of the contracts. In February 2007, Verizon contacted Kan-Pak by phone and advised Kan-Pak that Verizon had just discovered the rental contracts and did not believe that it was bound by the contracts. Verizon asked Kan-Pak to remove the compactors from all five facilities. Initially, Kan-Pak agreed, but, the day before it was to remove the compactors, Kan-Pak told Verizon that it was going to stand by the terms of the rental contracts. In a letter dated April 25, 2007, Verizon notified Kan-

---

[1] There is some dispute regarding the extent to which Allied made payments under the rental contracts, however, for purposes of this appeal, we conclude that this factual issue is not material.

Pak that it was to remove all equipment from the five sites covered by the rental contracts and that these rental contracts were terminated.

As a result of receiving Verizon's termination letter, Kan-Pak filed the present action. Kan-Pak's petition alleges that Verizon breached the rental agreements because its termination letter was received after each of the five rental agreements had automatically renewed for new 60 month periods. After discovery, both parties moved for summary judgment. In its motion, Kan-Pak contends that Verizon breached the rental contracts, ratified the rental contracts, and is estopped from challenging the validity of the contracts. By its motion, Verizon contends that the rental contracts are unenforceable against it because GLM lacked either actual or apparent authority to contract on behalf of Verizon, Verizon did not ratify the rental contracts, and Verizon is not estopped from challenging the validity of the contracts. The trial court granted Kan-Pak's summary judgment, denied Verizon's summary judgment, and awarded Kan-Pak $97,464, attorney fees of $8,000, court costs, and post-judgment interest at the rate of 8.25 percent per annum.

Following entry of summary judgment, Verizon filed a motion for new trial challenging the amount of the award of actual damages assessed by the trial court as well as whether Kan-Pak had established ratification or estoppel as a matter of law. As it relates to the amount of damages awarded, Verizon contends that the award was improper as a matter of law because future payments under the rental contracts were not discounted to present value. The trial court denied Verizon's motion.

4

On appeal, Verizon presents two issues. By its first issue, Verizon contends that the trial court erred in granting summary judgment in favor of Kan-Pak and in failing to grant summary judgment in favor of Verizon. By its second issue, Verizon contends that the trial court erred in denying Verizon's motion for new trial because Kan-Pak's evidence is legally insufficient to support the award of actual damages in the summary judgment.

Summary Judgment

Verizon contends that the trial court erred in granting Kan-Pak's motion for summary judgment and in denying Verizon's motion for summary judgment. Specifically, Verizon contends that the evidence raised a genuine issue of material fact as to each of the grounds upon which Kan-Pak sought summary judgment: ratification and equitable estoppel. Furthermore, Verizon contends that it is entitled to summary judgment because it established, as a matter of law, that the rental contracts were not binding on Verizon and, therefore, there was no enforceable contract upon which Kan-Pak could assert its breach of contract action.

When both parties to a suit move for summary judgment, each party bears the burden of establishing that it is entitled to judgment as a matter of law. City of Garland v. Dallas Morning News, 22 S.W.3d 351, 356 (Tex. 2000). When the trial court grants one party summary judgment and denies the other, we review both parties' summary judgment evidence, determine all questions presented, and render the judgment the trial judge should have rendered. FM Props. Operating Co. v. City of Austin, 22 S.W.3d 868, 872 (Tex. 2000). When the trial court does not specify the basis on which it granted summary

5

judgment, the judgment will be affirmed on any meritorious ground expressly presented in the motion and which is preserved for appellate review. State Farm Fire & Cas. Co. v. S.S., 858 S.W.2d 374, 380 (Tex. 1993).

Verizon moved for summary judgment on both traditional and no-evidence grounds, while Kan-Pak's motion asserted only traditional summary judgment grounds. See TEX. R. CIV. P.166a. We review a summary judgment *de novo* to determine whether the movant has established its right to summary judgment as a matter of law. See Dallas Cent. Appraisal Dist. v. Cunningham, 161 S.W.3d 293, 295 (Tex.App.–Dallas 2005, no pet.). In reviewing a summary judgment, we must examine the entire record in the light most favorable to the nonmovant, indulging every reasonable inference and resolving any doubts against the motion. See City of Keller v. Wilson, 168 S.W.3d 802, 824-25 (Tex. 2005).

Enforceability of the Rental Contracts

Verizon contends that it is entitled to summary judgment because it established, as a matter of law, that GLM had no authority to enter into contracts on Verizon's behalf and, therefore, the rental contracts are not enforceable against Verizon.[2]

---

[2] We are aware that, even if the rental contracts are not enforceable against Verizon based on GLM's lack of authority, the rental contracts would be enforceable if Verizon ratified the contracts or was equitably estopped from denying the validity of the contracts. We will address those issues below. In this analysis, our review is limited to whether a fact issue was raised as to whether GLM had the actual or apparent authority to bind Verizon by entering into the rental contracts on its behalf.

6

An agent cannot bind a principal unless the agent has actual or apparent authority to do so. See Lifshutz v. Lifshutz, 199 S.W.3d 9, 22 (Tex.App.–San Antonio 2006, pet. denied). Actual authority arises when the principal intentionally confers authority upon the agent or intentionally or by want of ordinary care allows the agent to believe he has authority. See id. Apparent authority exists when the principal's acts would lead a reasonably prudent person to believe that the agent had authority to act on behalf of the principal, the principal has either affirmatively held out the agent as possessing authority or knowingly and voluntarily permitted the agent to act in an unauthorized manner, and the party relying on the agent's apparent authority must have ascertained the fact and scope of the agent's authority. See Tex. Cityview Care Ctr., L.P. v. Fryer, 227 S.W.3d 345, 353 (Tex.App.–Fort Worth 2007, pet. dism'd by agr.). Only the actions of the principal can give rise to apparent authority; actions or representations of the agent have no effect on the determination. See id. Under either theory, the party alleging agency has the burden to prove its existence. Id. at 352.

In the present case, there is no evidence in the record that would raise a fact issue as to whether GLM had actual authority to contract on behalf of Verizon. The only evidence relating to the actual authority that Verizon intentionally conferred on GLM is the Waste Removal and Recycling Consultant Agreement between Verizon and GLM and a letter of authorization that Verizon gave to GLM to present to potential vendors. Each of these documents expressly provide that GLM was not authorized to enter into any agreement or contract for services. Because this right was expressly denied GLM, we cannot conclude that Verizon intentionally conferred authority to contract to GLM,

7

intentionally allowed GLM to believe that it had authority to contract on behalf of Verizon, or that Verizon failed to exercise the degree of care necessary to prevent GLM from believing that it had authority to contract on behalf of GLM. Thus, we agree with Verizon's summary judgment contention that it established, as a matter of law, that GLM did not have actual authority to contract on Verizon's behalf and, thus, Kan-Pak's breach of contract claims cannot be founded on the basis of GLM's actual authority to enter into the rental contracts on Verizon's behalf.

As to GLM's apparent authority, we are constrained to review only the evidence of the actions of Verizon in determining whether Kan-Pak could reasonably believe that GLM had authority to enter into the rental contracts on behalf of Verizon. See id. at 353. The evidence of Verizon's actions as it relates to whether they would lead a reasonably prudent person to believe that GLM was acting on Verizon's behalf is the letter of authorization that specifically defines the scope of GLM's agency and expressly prohibits GLM from contracting on Verizon's behalf. There is no evidence that Verizon held GLM out as having authority to contract on its behalf. Most significantly, however, is that there is no evidence that Kan-Pak ascertained the fact and scope of GLM's authority, which is a required element of a claim of apparent authority. See id. Kan-Pak was notified, by the letter of authorization, that GLM did not have authority to bind Verizon to a contract and, further, there is no evidence that Kan-Pak took any action to ascertain that GLM had been granted greater authority than what was expressly identified in the letter of authorization. Because there is no evidence to support one or more elements of a claim that Verizon is bound by the rental contracts because GLM had apparent authority to contract on behalf of Verizon,

8

Kan-Pak's breach of contract claims may not rest on the apparent authority of GLM to enter into the rental contracts on behalf of Verizon.

Ratification

However, even though Verizon is not bound by the rental contracts based on the actual or apparent authority of GLM to contract on Verizon's behalf, Verizon would still be bound by the contracts if it acted in a manner that ratified these contracts. In its motion for summary judgment, Kan-Pak contends that Verizon ratified the rental contracts by directly making 156 monthly payments under the rental contracts over the course of five to seven years. Kan-Pak further cites evidence that GLM paid another 148 monthly payments. By its summary judgment motion, Verizon contends that its actions were insufficient as a matter of law to ratify the rental contracts and that it could not have ratified the rental contracts before December 2006 because it was not aware of the material terms of the contracts. Remaining mindful that this issue is presented in the context of competing motions for summary judgment, we are required to examine the entire record in the light most favorable to the nonmovant, indulging every reasonable inference and resolving any doubts against the motion. See City of Keller, 168 S.W.3d at 824-25.

Ratification of a contract occurs when a party recognizes the validity of the contract by acting under the contract, performing under the contract, or affirmatively acknowledging the contract. Stable Energy, L.P. v. Newberry, 999 S.W.2d 538, 547 (Tex.App.–Austin 1999, pet. denied). However, a party can only ratify a contract if, at the time of ratification, it knew all of the material terms of the contract. See T & R Assocs., Inc. v. City of Amarillo,

9

688 S.W.2d 622, 630 (Tex.App.–Amarillo 1985, writ ref'd n.r.e.).  Thus, if a party acts in a manner that recognizes the validity of a contract with full knowledge of the material terms of the contract, the party has ratified the contract and may not later withdraw its ratification and seek to avoid the contract.  See Spellman v. Am. Universal Inv. Co., 687 S.W.2d 27, 29-30 (Tex.App.–Corpus Christi 1984, writ ref'd n.r.e.).  Any retention of the beneficial part of the transaction affirms the contract and bars rescission as a matter of law.  Id. at 30.

Kan-Pak contends that Verizon's direct payment of 156 monthly payments on three of the five contracts over the course of five to seven years coupled with GLM's payment of 148 monthly payments on the remaining contracts is sufficient evidence to establish that Verizon ratified the rental contracts as a matter of law.  However, there is no direct evidence that, prior to December 2006, Verizon had any knowledge of all of the material terms of the rental contracts.  Certainly, there is no direct evidence that Verizon made those payments with knowledge that the terms of the rental contracts included a 60 month term that would be automatically renewed for an additional 60 month term if not terminated in writing within 60 days of the expiration of the initial 60 month term.  For Verizon to have ratified the rental contracts, it would have to be shown that Verizon had knowledge of the material terms of the contract at the time that it performed under the contract.  Because, prior to December 2006, there is no direct evidence that Verizon knew the material terms of the rental contracts that it was performing under, we cannot conclude that Verizon ratified the rental contracts as a matter of law by paying the monthly rental payments.[3]

_____

[3] Because we are reviewing Kan-Pak's traditional motion for summary judgment, we may not indulge reasonable inferences in Kan-Pak's favor.  Thus, while we conclude that it is reasonable to infer that Verizon knew the material terms of the rental contracts prior

However, the evidence does establish that Verizon received copies of the rental contracts in December 2006. Verizon made no direct monthly rental payments under the rental contracts after it received copies of the rental contracts.[4] Further, in February 2007, Verizon contacted Kan-Pak and expressly repudiated the rental contracts.[5] Looking at the entire record and indulging all reasonable inferences in favor of Verizon, we conclude that Verizon took no action after December of 2006 that ratified the rental contracts prior to its express repudiation of those rental contracts in February 2007. Thus, Kan-Pak has failed to establish that it was entitled to summary judgment on the basis that Verizon ratified the rental contracts.

Verizon contends, in support of its motion for summary judgment, that the evidence establishes that it did not ratify the rental contracts as a matter of law. As discussed above, Verizon received services and made monthly rental payments under the rental contracts for five to seven years. Thus, Verizon retained some benefit under the rental contracts and the retention of this benefit is some evidence of ratification. See Spellman,

---

to December 2006, that inference does not support Kan-Pak's motion for summary judgment.

[4] However, we are aware that Verizon's new waste management consultant, Allied, did make monthly rental payments under the contracts after December 2006. However, there is no evidence that Allied had the actual or apparent authority to bind Verizon. Further, Allied's payments were not made until after Verizon had expressly repudiated the rental contracts. Thus, we do not conclude that Allied's sporadic payments in 2007 was evidence that Verizon ratified the rental contracts as a matter of law.

[5] In its brief, Kan-Pak contends that Verizon did not repudiate the rental contracts until its
written notification of termination of the rental contracts was received in May 2007. While the terms of the rental contracts required written notification of termination, an oral repudiation of a contract is sufficient to show an intent to avoid the contract.

11

687 S.W.2d at 30. Further, Verizon contends that GLM had no authority to contract on Verizon's behalf, yet Verizon acknowledges that it "knew that Kan-Pak had installed compactors at its sites and what Kan-Pak was charging for each month's rent." We believe that the presence of Kan-Pak's compactors at five of Verizon's Texas facilities and the invoicing of monthly rental charges gives rise to a reasonable inference that a reasonably prudent business would have investigated the basis of the monthly rental invoices and that, in the exercise of ordinary diligence, such an investigation would have revealed the terms of the rental contracts. While we cannot say that Verizon's accepting of the benefits of the rental contracts, without proof of its knowledge of the material terms of the rental contracts, was a ratification of those contracts, we do conclude that Verizon's conscious indifference to discovering the terms of the rental contracts gives rise to a reasonable inference that it knew or, at least, should have known the material terms of the rental contracts. As such, we conclude that the evidence raises a genuine issue of material fact as to whether Verizon ratified the rental contracts by making monthly rental payments under those contracts. Therefore, we affirm the trial court's denial of Verizon's motion for summary judgment.

Equitable Estoppel

Finally, Kan-Pak contends that Verizon is equitably estopped from denying the validity of the rental contracts based on its payment of the monthly rental charges.

A claim of equitable estoppel requires proof of five elements: (1) a false representation or concealment of material facts, (2) done with actual or constructive

knowledge that the representation was false or that the concealed facts were material, (3) made to a party without knowledge or the means to discover the facts, (4) with intent that the other party act upon the representation or concealment, and (5) the other party detrimentally relied on the representation or concealment. See Hausman v. Hausman, 199 S.W.3d 38, 43 (Tex.App.–San Antonio 2006, no pet.).

However, in the present case, Kan-Pak has presented no evidence that would establish, as a matter of law, that Verizon made any knowing false representation or intentionally concealed any material facts relating to the rental contracts. As discussed above, it is possible that Verizon had knowledge of the terms of the rental contracts and continued to receive the benefit of those rental contracts, which might rise to the level of an intentional concealment of material fact, but the evidence does no more than raise an inference of that fact and, therefore, is insufficient to support Kan-Pak's motion for summary judgment. Because Kan-Pak has failed to establish as a matter of law that Verizon is equitably estopped from denying the validity of the rental contracts, the trial court could not have granted summary judgment on that basis.

Conclusion

Because genuine issues of material fact are raised by the evidence as to each of the grounds upon which Kan-Pak moved for summary judgment and because the evidence does not establish that Verizon did not ratify the rental contracts as a matter of law, we reverse the trial court's grant of summary judgment in favor of Kan-Pak and affirm the trial court's denial of Verizon's motion for summary judgment.

13

Damages

Finally, Verizon contends that the trial court erred in denying its motion for new trial because the trial court's award of actual damages was not discounted to present value. Because we have reversed the trial court's summary judgment, the award of damages has also been reversed. As such, the issue of the propriety of the trial court's award of damages is not before this Court. The "judicial power does not embrace the giving of advisory opinions." Gen. Land Office of Texas v. OXY U.S.A., Inc., 789 S.W.2d 569, 570 (Tex. 1990) (quoting Fireman's Ins. Co. v. Burch, 442 S.W.2d 331, 333 (Tex. 1968)).

Conclusion

For the foregoing reasons, we reverse the trial court's grant of summary judgment in favor of Kan-Pak, affirm the trial court's denial of Verizon's motion for summary judgment, and remand the cause to the trial court.


Mackey K. Hancock
Justice

14