# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

May 31, 2012

No. 10-20865

Lyle W. Cayce
Clerk

ADVANCED NANO COATINGS, INCORPORATED; INTUMESCENTS
ASSOCIATES GROUP; VADO AG,

Plaintiffs-Appellants

v.

JOSEPH HANAFIN,

Defendant-Appellee

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 09-01243

Before BENAVIDES, STEWART, and GRAVES, Circuit Judges.

PER CURIAM:[*]

This appeal is from a summary judgment, and it stems from an employment contract. The three Plaintiffs-Appellants, Vado AG (Vado), the employer corporation, Advanced Nano Corporation (ANC), a wholly owned subsidiary of Vado, and Intumescents Associates Group (IAG), an affiliated partnership, allege that the Defendant-Appellee employee breached his fiduciary duties and tortiously interfered with a prospective contract. The employer also

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 10-20865

alleged that the employee breached the employment contract. The district court held that the employer lacked standing to bring suit. Further, the district court held that the partnership lacked a legal existence and had no capacity to sue. Finally, the district court found (1) no evidence that the employee had breached the alleged fiduciary duties allegedly owed to the three Plaintiffs-Appellants; and (2) no evidence that the employee tortiously interfered with a prospective contract.

We conclude that the employer had standing under Texas law to bring the breach of contract claim. Further, there was evidence of a fiduciary relationship between the employer and the employee, and a fact issue exists as to whether the partnership had the capacity to bring suit. Finally, there is a genuine issue of material fact with respect to both the breach of fiduciary duties claim and the claim of tortious interference with a prospective contract.

I.    BACKGROUND

The Defendant-Appellee, Joseph Hanafin (Hanafin), is a chemist and is well known in the industry for developing fire-proof coatings. In 2005, Hanafin entered into an employment contract with Vado, a Swiss company licensed to conduct business in the United States. The contract provided that "[a]ny formulae, applications or concepts created, designed or contemplated by Hanafin during the course of his employment with Vado will be the property of Vado." It further provided that "[u]ntil otherwise agreed, Hanafin will . . . devote 100% of his professional time to the affairs of Vado and ANC." ANC is a Texas corporation and is a wholly owned subsidiary of Vado. Hanafin was to serve as one of four directors of Vado and ultimately hold a twenty-five percent interest in the outstanding shares of Vado. He also agreed to serve as the president of ANC during his tenure.

Hugh Scott (Hugh) is an attorney licensed in Texas. He signed the Hanafin-Vado employment agreement as "President" of Vado and formed the

2

company ANC. Hanafin, Hugh, and Craig Scott (Craig) formed a new partnership called IAG to market any future technology Hanafin might develop. IAG is also a Plaintiff-Appellant to the instant suit. IAG attempted to locate a Fortune 500 company that had adequate resources to manufacture and sell any products Hanafin invented.

In 2007, IAG entered into negotiations with a multi-national paint company called Jotun A/S (Jotun). According to the Plaintiffs-Appellants, "Jotun decided it wanted to purchase the right to market and sell two fire-retardant compounds developed by Hanafin and owned by Vado." IAG and Jotun entered into a "Mutual Confidentiality and Non-Disclosure Agreement," which became effective November 28, 2007. Craig signed this agreement as Director of IAG. Although there were multiple meetings and discussions, Jotun and IAG ultimately did not enter into an agreement.

In early 2008, Vado conveyed to ANC all its rights pursuant to the Hanafin employment contract, except that it retained a small royalty interest on any technology that had been developed by Hanafin or ANC. According to Hugh's deposition testimony, Vado had no contract rights after the assignment.

Jotun expressed interest in hiring Hanafin. Without Hanafin's knowledge, Craig began monitoring Hanafin's email account. However, Craig did not find any evidence that Hanafin had shared proprietary information with Jotun or other third parties. In February of 2009, Hanafin resigned.

In April of 2009, Vado, ANC, and IAG filed suit against Hanafin, alleging breach of contract, breach of fiduciary duties, and tortious interference with a prospective contract. The Plaintiffs-Appellants alleged that in violation of the terms of the employment agreement Hanafin earned personal and undisclosed profits from consulting work he performed for a company called Promat, which is a limited liability company under the laws of England and Wales with its

principal place of business in England.   Promat was dismissed for lack of personal jurisdiction, and this ruling is not before the Court on appeal.

It was also alleged that Hanafin entered into secret negotiations with Jotun regarding the chemical inventions at issue, and that during the time period that ANC and Vado were negotiating to sell chemical technologies to Jotun, Hanafin was simultaneously attempting to negotiate an employment package with Jotun. The Plaintiffs-Appellants alleged that this conduct violated Hanafin's fiduciary duties of candor and full disclosure and also tortiously interfered with IAG's potential contracts with Jotun.   The Plaintiffs-Appellants further allege that while still receiving payment under the employment agreement, Hanafin stopped working as a chemist for Vado and subsequently refused to turn over work product, test results, and other materials that he created during his employment by Vado.

On August 18, 2010, Hans Hagmann, a Swiss attorney, contacted Jotun's attorneys of record by email to explain:   (1) that Hagmann was Vado's sole director; (2)   Hugh was Vado's representative in the legal proceedings; and (3) Hagmann ratified the legal actions taken on behalf of Vado to date.

On August 30, 2010, Hanafin filed a motion for summary judgment, arguing that the breach of contract claim was meritless because Hugh had no authority to sign the employment contract on behalf of Vado.   Additionally, Hanafin asserted that Vado was not a proper party to the action based on Vado's assignment of the contract to ANC. Hanafin also challenged the capacity and legal existence of IAG.   The district court granted the motion for summary judgment, ruling that the assignment of the employment contract from Vado to ANC divested Vado of any legal standing to file suit for breach of contract.   The district court further ruled that ANC's subsequent assignment to Vado of all its causes of action under the employment agreement did not cure the standing defect because standing must exist at the time the suit is filed.   In addition to

the standing defect, the district court found that Vado was not a proper party to sue for breach of the employment contract. Further, the court questioned whether Hugh actually had authority to act on behalf of Vado in executing the employment agreement, stating the employment agreement was void for lack of authority at the outset. With respect to IAG, the court found that it lacked legal existence as well as the capacity to bring suit on any claim, thus finding its claims were void because there was no evidence that it existed as an entity at the time of the alleged transactions. The court also found that there was no evidence that Hanafin had breached any fiduciary duties or tortiously interfered with prospective contracts and entered a take nothing judgment. The Plaintiffs-Appellants now appeal.

II.    ANALYSIS

A.  Standard of Review

We review summary judgment de novo, using the same standards as the district court. *Holt v. State Farm Fire & Cas. Co.*, 627 F.3d 188, 191 (5th Cir. 2010). Summary judgment is proper when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). We view the evidence and all justifiable inferences in the light most favorable to the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

B.  Standing

Vado contends that the district court erred in ruling that Vado lacked standing to assert a breach of contract claim against Hanafin. "Constitutional standing is a jurisdictional question." *Brown v. Offshore Specialty Fabricators, Inc.*, 663 F.3d 759, 769 (5th Cir. 2011). This Court reviews questions of standing de novo. *Arguello v. Conoco, Inc.*, 330 F.3d 355, 361 (5th Cir. 2003).

It is undisputed that ANC is a wholly owned subsidiary of Vado. Generally speaking, Vado, as a parent corporation to ANC, would have standing

to bring suit on behalf of ANC. *See Franchise Tax Bd. of Cal. v. Alcan Aluminium*, 493 U.S. 331, 336 (1990) (opining that the "Court of Appeals was quite right in holding that respondents have Article III standing to challenge the taxes that their wholly owned subsidiaries are required to pay");[1] *cf. Papaila v. Uniden Am. Corp.,* 51 F.3d 54, 55-56 (5th Cir. 1995) (holding that a wholly owned subsidiary of a foreign parent corporation had standing to invoke the rights of the parent corporation pursuant to a treaty in an employment discrimination suit). Vado thus had Article III standing to bring the instant suit.

Nonetheless, the district court ruled that because Vado had assigned its rights under the contract to ANC, Texas law precluded Vado from bringing the breach of contract claim. We now address whether Texas law prohibited Vado from initiating this suit. As previously set forth, on January 1, 2008, Vado conveyed to ANC all its rights pursuant to the Hanafin employment contract, except that it retained a small royalty interest on any technology developed by Hanafin or ANC. The instant suit was filed in 2009, and while it was still pending, ANC assigned all of its rights pursuant to the employment contract back to Vado. The district court ruled that Vado's assignment of its rights under the employment contract to ANC divested Vado of any legal standing to file suit for breach of contract. The district court further ruled that ANC's subsequent assignment to Vado of all its rights under the employment agreement did not cure the standing defect because standing must exist at the time the suit is filed.

Under Texas law, once a cause of action has been assigned to another person, the assignor is precluded from bringing suit "unless the assignor has

---

[1] The Supreme Court did not decide whether the respondents met the prudential requirements of standing because that case involved a restriction prohibiting shareholders from bringing suit to enforce rights of the corporation. *Franchise Tax Bd. of Cal.,* 493 U.S. at 337-38. That restriction is not applicable to the instant case.

retained some right or interest therein." *River Consulting, Inc.*, *v. Sullivan*, 848 S.W.2d 165, 169 (Tex. App.—Houston [1st Dist] 1992, writ denied), *overruled on other grounds by Formosa Plastics Corp. USA*, *v. Presidio Engineers and Contractors, Inc.,* 960 S.W.2d 41, 46-47 (Tex. 1998). Vado points out that it expressly retained an interest in the contract, a small royalty interest in any technology that would be developed. Thus, Vado argues that it had standing based on its retained interest in the contract. We need not determine whether the retained royalty interest was sufficient to allow Vado to bring suit because the rule precluding an assignor from bringing suit based on the rights it assigned is inapplicable when the assignor and the assignee have at all times been party to the suit. In other words, as "long as the original parties remain in the suit[,] and the rights of the person who was plaintiff at the time of the commencement of the suit remain in issue, the assignment does not affect the justiciability of the cause of action." *Bay Ridge Util. Dist. v. 4M Laundry,* 717 S.W.2d 92, 97 (Tex.App. —Houston [1st Dist.] 1986, writ ref'd n.r.e.). Thus, the district court erred in ruling that Texas law precluded Vado from bringing the instant breach of contract claim against Hanafin.

Next, the district court stated that even if Vado had standing to bring the breach of contract claim, the contract "appears void for lack of authority at the outset." We note that it is unclear whether the district court actually ruled that the contract was void for lack of authority because the court stated that it "*appears* void." (emphasis added). In any event, we need not tarry long with this issue. The district court noted that Hugh Scott, who signed the contract as "President of Vado," was only acting as President for the day the contract was signed. The court further stated that Hugh had no written documentation granting him authority to sign on behalf of Vado and had never served as an officer of Vado. The record, however, does contain an affidavit from Hugh Scott stating that at the time he executed the contract he had the authority of Vado's

sole stockholder, Jon Galland, and that his actions have subsequently been ratified by Vado's current director, Hans Hagmann. The record also contains an email from Hagmann in which he expressly (1) confirmed Hugh Scott's authority to file suit on behalf Vado and (2) ratified all actions taken by Hugh Scott.

Moreover, under Texas law, "if a party acts in a manner that recognizes the validity of a contract with full knowledge of the material terms of the contract, the party has ratified the contract and may not later withdraw its ratification and seek to avoid the contract." *Verizon Corporate Servs. Corp. v. Kan-Pak Sys., Inc.*, 290 S.W.3d 899, 906 (Tex.App.–Amarillo 2009, no pet.). Hanafin admitted in his pleadings that he signed the employment contract at issue on November 15, 2005.  The contract provided that Hanafin would serve as a director and employee of Vado and as President of ANC.  Over three years later, on February 2, 2009, in a signed letter, Hanafin expressly resigned from his position as an employee and director of Vado and his position as President of ANC.  Thus, even if Hugh initially did not have the authority to sign on behalf of Vado, in light of the evidence that the parties' conduct ratified the contract, the district court erred in granting summary judgment on this basis.  *See Bowman v. Lumberton Indep. Sch. Dist.* 801 S.W.2d 883, 884, 889-90 (Tex. 1990) (holding that a fact issue with respect to whether terms of contract were ratified precluded summary judgment).

### C.    Existence of IAG Partnership

The Plaintiffs-Appellants contend that the district court erred in ruling that the IAG partnership was never formalized and that it lacked the legal capacity to bring the instant suit.  It is undisputed that pursuant to Federal Rule of Civil Procedure 17(b) the capacity of IAG to sue is determined by Texas law.  Texas law provides that "an association of 2 or more persons to carry on a business for profit as owners creates a partnership, regardless of whether: (1) the persons intend to create a partnership; or (2) the association is called a

No. 10-20865

'partnership,' 'joint venture,' or other name." TEX. BUS. ORG. CODE ANN. § 152.051(b). However, persons doing business under an assumed name "may not maintain in a court of [Texas] an action or proceeding arising out of a contract or act in which an assumed name was used until an original, new, or renewed certificate has been filed as required by this chapter." TEX. BUS. & COM. CODE ANN. § 71.201(a).

IAG did not file an assumed name certificate until two weeks prior to the scheduled trial date. The certificate provided that IAG is a partnership owned by Craig and Hugh and the assumed name would be used from September 2010 forward. The district court recognized that it is possible for partnerships to cure the lack of capacity by belatedly filing a certificate, but nonetheless ruled that IAG could not effect such cure "because it does not exist today and did not exist at the time the complaint was filed in this case." Under Texas law, there are five factors to consider in determining whether a partnership has been created:

(1) receipt or right to receive a share of profits of the business;
(2) expression of an intent to be partners in the business;
(3) participation or right to participate in control of the business;
(4) sharing or agreeing to share or sharing:
    (A) losses of the business; or
    (B) liability for claims by third parties against the business; and
(5) agreement to contribute or contributing money or property to the business.

TEX. BUS. ORGS. CODE § 152.052(a).[2]

With respect to the first of the above-quoted five factors, in his deposition, Hugh Scott testified that Hanafin had a twenty-five percent interest in the IAG partnership, which indicates that Hanafin had a right to receive a share of IAG's profits. With respect to the second factor, in his deposition testimony, Hanafin

---

[2] *See Ingram v. Deere*, 288 S.W.3d 886, 894 n.4 (Tex. 2009) (noting that on January 1, 2010, § 152.052 will apply to all partnerships regardless of the formation date).

No. 10-20865

admitted that Hugh, Craig, and he "formed a partnership, IAG." Hanafin also admitted that he performed work on behalf of IAG under a nondisclosure agreement. In addition, Hanafin, as IAG's Director of Technology Development, signed a "Confidentiality and Non-Disclosure Agreement" agreement between IAG and Jotun.

As for the third factor regarding participation in the control of the business, Hanafin dealt directly with other companies on behalf of IAG in that Hanafin had the authority to sign agreements on behalf of IAG. With respect to the fourth factor, it does not appear that the partnership agreement required Hanafin to share in IAG's business losses. Nonetheless, the statute in question expressly provides that an "agreement by the owners of a business to share losses is not necessary to create a partnership." § 152.052(c). As for the fifth and final factor, Hanafin's creation of formulas and product would constitute a contribution of property to the business and thus weigh in favor of finding that IAG was a partnership.

Accordingly, four of the five factors indicate that IAG was a partnership. The one factor that does not so indicate is that there was no apparent agreement that Hanafin would share business losses or liability claims against IAG. However, as set forth above, the statute provides that such an agreement is not necessary to the creation of a partnership. Under these circumstances, the district court erred in ruling that there was no issue of material fact with respect to whether IAG existed as a partnership.

D.    Tortious Interference Claim

Plaintiffs-Appellants contend that the district court erred in finding no evidence that Hanafin tortiously interfered with prospective contracts. The elements of a claim for tortious interference with a prospective contract are: (1) a reasonable probability that the parties would have entered into a contract; (2) an independently tortious or unlawful act by the defendant that prevented

10

the contractual relationship; (3) the defendant committed the act with a conscious desire to prevent the contract or knew that such interference was substantially certain to occur as a result of his conduct; and (4) the plaintiff suffered actual harm or damage as a result of the interference. *Faucette v. Chantos*, 322 S.W.3d 901, 914 (Tex. App.– Houston [14 Dist.] 2010, no pet.).

To demonstrate that there was a reasonable probability of a contract, "it is not necessary to prove that the contract would have certainly been made but for the interference, [however,] it must be reasonably probable, considering all the facts and circumstances attendant to the transaction." *Milam v. Nat'l Ins. Crime Bureau,* 989 S.W.2d 126, 132 (Tex.App.—San Antonio 1999, no pet.). Plaintiffs-Appellants assert that Jotun proposed to pay $20 million over a ten-year period for their formulations and proprietary technology. Although Hanafin does not dispute the existence of this proposal, he responds that the evidence indicates that the Plaintiffs-Appellants and Jotun could not reach an agreement regarding the basic terms for a possible contract.

The record demonstrates that Jotun believed that Hanafin was one of a handful of people who were qualified to fulfill its plan of bringing a particular epoxy to market. The record further reveals that a power point presentation, which was used by Jotun, stated that after the second meeting between Jotun and IAG, "[w]e had a clear mandate of buying the IPR of the product and maybe using IAG as a limited consultant." Under these circumstances, we are persuaded that this evidence is sufficient to raise an issue of fact with respect to whether there was a reasonable probability of Jotun and IAG entering into a contract.

The second element of tortious interference with a contract is an independently tortious or unlawful act by Hanafin that prevented the contractual relationship. As set forth in detail in Section E.2. below, there is a genuine issue of material fact with respect to whether Hanafin breached his

fiduciary duties of candor and full disclosure to the Plaintiffs-Appellants. Thus, there is a fact issue as to whether Hanafin committed a tortious act, thereby satisfying this element. *See Bright v. Addison*, 171 S.W.3d 588, 599 (Tex.App.-Dallas 2005, pet. denied) (attorney's breach of fiduciary duty to client supported finding of interference with prospective business relationship).

The third element is whether Hanafin was aware of the impact his breach of fiduciary duties would have on the Plaintiffs-Appellants. Hanafin is a sophisticated businessman and is well known for his expertise in the field of fire-resistant epoxy research and development. Hanafin was the sole employee responsible for the development of this epoxy product. Hanafin conducted business for IAG, using the title of Director of the Technology Department. Viewing the evidence in the light most favorable to the Plaintiffs-Appellants, there is a fact issue as to whether Hanafin would have been aware of the impact his alleged conduct would have on the Plaintiffs-Appellants.

Finally, the last element is whether the Plaintiffs-Appellants suffered harm as a result of Hanafin's tortious interference. Plaintiffs-Appellants claim they lost a multi-million dollar contract with Jotun because of Hanafin's interference. We have found a fact issue with respect to a reasonable probability that Jotun and IAG would have entered into a contract but for the alleged tortious interference. The record evidence indicates that the contract would have been a profitable one for IAG. Thus, the evidence raises a genuine issue of fact with respect to whether the Plaintiffs-Appellants suffered an injury as a result of Hanafin's alleged tortious interference.

### E.     Breach of Fiduciary Duty

The district court found that there was no evidence that Hanafin had breached his fiduciary duties. The elements of a breach of fiduciary duty claim are: (1) the existence of a fiduciary relationship between the plaintiff and the defendant; (2) the defendant must have breached a fiduciary duty to the

No. 10-20865

plaintiff; (3) and the defendant's breach must have resulted in an injury to the plaintiff or a benefit to the defendant. *Jones v. Blume*, 196 S.W.3d 440, 447 (Tex. App.–Dallas 2006, pet. denied).

### 1.    Existence of Fiduciary Relationship

In their complaint, the Plaintiffs-Appellants alleged that Hanafin had a fiduciary relationship with the Plaintiffs-Appellants because "[a]t all times relevant hereto Hanafin enjoyed the status of Director, fully vested shareholder, and President of ANC; that of director of Vado; and, that of an IAG partner." Under Texas law, "[t]here are two types of fiduciary relationships—a formal fiduciary relationship that arises as a matter of law, such as principal/agent or partners, and an informal fiduciary relationship arising from a confidential relationship where one person trusts in and relies upon another, whether the relation is moral social, domestic or merely personal." *Hoggett v. Brown*, 971 S.W.2d 472, 487 (Tex.App.–Houston [14 Dist.] 1997, pet. denied) (internal quotation marks and citation omitted).

### Vado

The district court found that there was no evidence of a fiduciary relationship between Hanafin and Vado. The court first recited Vado's assignment of its contractual rights under the contract to ANC. As previously set forth, despite that assignment, Vado had standing to bring the instant suit. The district court also relied on an email in the record from Hans Hagmann, who claimed to be the sole Vado director under Swiss law.   The district court reasoned that because Vado's claim of a fiduciary relationship is based upon Hanafin's status as a director of Vado, and, according to Hagmann, Hanafin was not a director of Vado, Vado's claim of a fiduciary relationship fails.   The Plaintiffs-Appellants counter that Hanafin expressly assumed fiduciary duties of the Vado director when he signed the employment contract. They also point to Hanafin's resignation as an employee and director of Vado on February 2,

13

2009.  It is not apparent why the district court deemed the email from Hagmann dispositive of this issue.

In any event, even assuming that no formal fiduciary relationship based on Hanafin's position as a director of Vado existed, Texas law recognizes that "[e]ven apart from any written contract, a fiduciary relationship arises from an employment relationship forbidding an employee from using trade secrets or confidential or proprietary information in a manner adverse to the employer." *Mabrey v. SandStream, Inc.*, 124 S.W.3d 302, 316 (Tex.App.–Fort Worth 2003, no pet.).  The instant employment agreement provided that any "formulae, applications or concepts created, designed or contemplated by Hanafin during the course of his employment with Vado will be the property of Vado."  Thus, the employment contract between Vado and Hanafin prohibited Hanafin from using the confidential information against Vado, which gave rise to a fiduciary relationship under Texas law.  Therefore, the district court erred in finding no evidence of a fiduciary relationship between Hanafin and Vado.[3]

### ANC

In his deposition testimony, Hanafin admitted that he had been a corporate officer of ANC.  The district court implicitly ruled that there was a fiduciary relationship between Hanafin and ANC, and Hanafin did not appeal this ruling.

### 2.    Breach of Fiduciary Duty

The next question is whether Hanafin breached his fiduciary duties of candor and full disclosure to the Plaintiffs- Appellants.  *See Flanary v. Mills*, 150 S.W.3d 785, 795 (Tex.App.—Austin, 2004, pet. denied) (explaining that a

---

[3] As previously set forth, the district court ruled that IAG lacked the legal capacity to bring a breach of fiduciary duty claim against Hanafin.  Thus, the district court did not analyze whether Hanafin owed IAG any fiduciary duties.  Of course, if IAG is a partnership under Texas law, then Hanafin, as one of the partners of IAG, would have owed a fiduciary duty to IAG.  *See Hoggett*, 971 S.W.2d at 487.

fiduciary relationship imposes duties of good faith, candor, and full disclosure with respect to matters involving the principal's interests and a general rule against the fiduciary's exploiting the relationship to benefit his own interest).[4] The district court found no breach of a fiduciary duty, stating that there was no evidence that Hanafin received any payment from Jotun or had a consulting agreement with Promat, the British company that was dismissed for lack of personal jurisdiction and is not party to this appeal.

The Plaintiffs-Appellants assert that Hanafin admitted under oath that he received compensation for consulting work he secretly performed for Promat. During his deposition, Hanafin admitted that he had entered into a private consulting agreement with Promat after he had entered into the employment contract with Vado. He further admitted Promat paid him $12,000 for his consulting work. Hanafin terminated his agreement with Promat in 2008. Hanafin's work for Promat was in clear violation of the terms of his contract with Vado, in which he agreed to devote 100% of his professional time to Vado.

Additionally, the Plaintiffs-Appellants contend that Hanafin secretly attempted to negotiate an employment package with Jotun during the same time that ANC and IAG were trying to form a joint venture with Jotun. They further contend that this self-dealing by Hanafin persuaded Jotun to bypass ANC and IAG by hiring Hanafin, thereby acquiring the technology at a fraction of the price. The Plaintiffs-Appellants point to email correspondence showing that Hanafin had asked Jotun to pay his legal fees so that he could break away from IAG. In that correspondence, a Jotun representative stated that Jotun would pay Hanafin's legal fees. That email further provided that the Jotun representative "need[ed] to discuss with Joe [Hanafin] about the IAG formula,

---

[4] The district court found that no evidence exists in the record establishing that Hanafin ever disclosed any proprietary information. At oral argument, Plaintiffs-Appellants counsel disavowed this claim.

do we buy it or start from new!!!"  Additionally, Craig's affidavit provides that Hanafin's research and development records demonstrate that Hanafin stopped conducting research for IAG approximately 8 months before he officially resigned.  Craig's affidavit further provides that:

> Hanafin's work product is incomplete in that compounds which have been tested are not fully disclosed, and/or one or more of the three key components are missing.  We still to this day do not have the formulation that was the basis of the listing of compounds evaluated by the Keeling Law Firm and this formulation is not contained in the lab notebooks.

This evidence demonstrates that the district court erred in ruling that there was no genuine issue of material fact regarding whether Hanafin violated his duties of candor and full disclosure to the Plaintiffs-Appellants.

### 3.    Injury as a Result of the Breach

The final question is whether the breach of fiduciary duties caused an injury to the Plaintiffs-Appellants or a benefit to Hanafin.  As set forth in Section D., *supra*, we held that the Plaintiffs-Appellants have shown an issue of fact with respect to whether they suffered an injury as a result of Hanafin's tortious conduct.  Because Hanafin's conduct that allegedly constitutes tortious interference with a prospective contract is the same conduct that constitutes a breach of his fiduciary duties, we likewise hold that there is a fact issue with respect to whether the breach of fiduciary duties caused an injury to the Plaintiffs-Appellants.

### III.    CONCLUSION

For the above reasons, we VACATE the summary judgment and REMAND this case for further proceedings consistent with this opinion.

VACATED AND REMANDED.