# IN THE UNITED STATES COURT OF APPEALS

# FOR THE FIFTH CIRCUIT

No. 99-20498

TRANSITIONAL LEARNING COMMUNITY
AT GALVESTON, INC.,

Plaintiff-Appellee,

versus

UNITED STATES OFFICE OF PERSONNEL MANAGEMENT,

Defendant-Appellant.

Appeal from the United States District Court
for the Southern District of Texas

August 9, 2000

Before BARKSDALE, BENAVIDES, and STEWART, Circuit Judges.

CARL E. STEWART, Circuit Judge:

The main issue before us is whether the district court erred when it reversed the

Office of Personnel Management's ("OPM") ruling that denied the plaintiff's claims

made under a government employees insurance policy.  For reasons assigned below, we reverse the district court's ruling.

FACTUAL AND PROCEDURAL HISTORY

Transitional Learning Community, Inc.("TLC"), is a nonprofit corporation in Galveston, Texas.  TLC is a comprehensive outpatient rehabilitation facility devoted to post-acute brain injury rehabilitation.  It provides individualized treatment programs that include therapy and treatment by clinical psychologists, physical therapists, and occupational therapists.

In May 1996,  Senior United States District Court Judge Hugh Gibson ("Judge Gibson") suffered a stroke which resulted in paralysis affecting the left side of his body.  Judge Gibson was admitted to the University of Texas Medical Branch Adult Rehabilitation Unit ("UT") where he received comprehensive inpatient care which included stroke rehabilitation.  After he was released from the hospital, he continued to receive care from a UT outpatient facility.

In January 1997, Judge Gibson began receiving care from TLC on an outpatient basis.  TLC is not affiliated with UT.  His treatment included occupational therapy, physical therapy, speech/language pathology, and an abbreviated form of neuropsychological evaluation.  Judge Gibson received these services from January 1997 to August 1997.

Judge Gibson was a federal employee covered by a health insurance policy issued by Government Employees Hospital Association ("GEHA"). GEHA is a health benefit plan regulated under the Federal Employee Health Benefits Act ("FEHBA"), 5 U.S.C. §§ 8901-14. Under FEHBA, the OPM is delegated the authority to promulgate regulations and to negotiate and contract with qualifying private insurance carriers to offer health benefit plans to federal employees. See 5 U.S.C. § 8902-03. Judge Gibson assigned his benefits under the GEHA insurance plan (the "Plan") to TLC. TLC submitted charges totaling $15,299 to GEHA for payment for the various therapies provided to Judge Gibson. GEHA denied the claim.

Consequently, TLC sought administrative review of GEHA's denial of TLC's claim. Under 5 C.F.R. § 890.105 (a)(1)(e), TLC may seek review of GEHA's denial to OPM. OPM denied TLC's request to grant coverage, and thus affirmed GEHA's decision. Pursuant to 5 C.F.R. § 890.107, TLC filed an action in federal district court to seek review of OPM's ruling.

At the district court, both parties filed motions for summary judgment. TLC argued that the speech, physical, and occupational therapies that it provided to Judge Gibson were covered under the Plan. OPM maintained that under the "general exclusions" provision, which we address below, the claims were not covered because

3

TLC is a "noncovered facility." The district court reversed OPM's ruling, and granted

TLC's motion for summary judgment. OPM now appeals the district court's judgment.

This court reviews a district court grant of summary judgment de novo. See

Rivers v. Central and South West Corporation, 186 F.3d 681, 682 (5th Cir.1999).

Summary judgment is appropriate, when, viewing the evidence in the light most

favorable to the nonmoving party, the record reflects that no genuine issue of any

material fact exists. See Celotex Corp. v. Catrett, 477 U.S. 317, 322-324, 106 S.Ct.

2548, 91 L.Ed.2d 265 (1986).

The Plan

The purpose of the Plan is to provide health care benefits for federal employees.

To achieve this end, health plans covered under FEHBA must conform to minimum

standards determined by OPM and must contain a detailed statement of benefits

offered and shall include such maximums, limitations, exclusions, and other definitions

of benefits as the OPM considers necessary or desirable. See 5 U.S.C. § 8902(d); see

also 5 C.F.R. § 890.201. Pursuant to this dictate, OPM provides employees with "such

information . . . as may be necessary to enable the individual to exercise an informed

choice among the types" of plans offered under FEHBA. Id. at § 8907(a). Thus,

employees are issued a document explaining the services or benefits covered under the

4

plans, limitations, exclusions, procedures of obtaining benefits, and the principal provisions of the plans affecting the enrollee and any eligible family members. Id.

The Plan in the instant case is divided into five main sections entitled: (1) "How this Plan Works"; (2) "Benefits";(3) "Other Information"; (4) "How this Plan Changes"; and (5) "Summary of Benefits." The parties' dispute essentially revolves around two of these sections, "How this Plan Works," and "Benefits." In pertinent part, the "How this Plan Works" section defines a "covered facility" and a "covered provider." "Covered facilities" are (1) freestanding ambulatory facilities, (2) Hospice centers, and (3) Hospitals.[1] "Covered providers" include, *inter alia,* licensed physicians, qualified psychologists, speech, physical and occupational therapists. This subsection expressly provides that the term "doctor" includes these providers when the services are performed within the scope of the license or certification.

The "How This Plan Works" section also includes a subsection entitled "General Exclusions." This subsection provides a list of exclusions. In pertinent part, this subsection states that "[b]enefits will not be paid for services and supplies when" "furnished or billed by a <u>non covered</u> <u>facility</u>, . . . ." (emphasis added). Furthermore, under the "General Exclusions" subsection, the Plan states that "[t]hese exclusions

---

[1] The Plan defines a freestanding ambulatory facility, hospice, and hospital. Because TLC concedes that it is not a "covered facility," we need not discuss the Plan's definitions of these facilities.

apply to <u>more than one or to all</u> benefit categories. Exclusions that are primarily identified with a single benefit category are listed along with that benefit category, but may apply to other categories." (emphasis added). As such, the Plan advises that enrollees, in addition to reviewing the "General Exclusions," review the specific benefit sections in order to be aware of all of the exclusions.

The Plan lists eight categories of benefits under the "Benefits" section. They include: (1) "Inpatient Hospital Benefits"; (2) "Surgical Benefits"; (3) "Maternity Benefits"; (4) "Mental Conditions/Substance Abuse Benefits; (5) "Other Medical Benefits"; (6) "Additional Benefits"; (7) "Prescription Drugs Benefits"; and (8) "Dental Benefits." Pertinent to this case are the "Inpatient Hospital Benefits" and the "Other Medical Benefits" categories which we address below.

## DISCUSSION

At the outset, we note that the parties dispute whether we should defer to OPM's interpretation of the Plan. Thus, the issue is whether we should treat OPM's interpretation of the Plan as if it were an agency regulation and thus accord its construction of the Plan deference under <u>Chevron v. Natural Resources Defense Council, Inc.</u>, 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed. 2d 694 (1984)(holding that courts should defer to reasonable agency interpretation of statutes), or whether we

6

should review the Plan under traditional canons of contract interpretation, and thus review the Plan de novo.

In Chevron, the Supreme Court articulated rules to govern judicial review of an agency's interpretation of statutes and regulations.  Under Chevron, on review a court shall give controlling weight to an agency's interpretation of statutes and regulations unless the court determines that the agency's decision is "arbitrary, capricious, or manifestly contrary to the statute."  Id. at 844, 104 S.Ct. 2778.[2]

Chevron, however, does not speak to the appropriate level of review courts are to give to an agency's interpretation of a contract.  OPM argues that we should defer to its decision because the Plan is akin to a regulatory scheme.  Furthermore, OPM contends that even if the court were to view the Plan as a traditional contract, deference is appropriate where the interpretation of the contract is "enhanced by the agency's expert understanding of the industry."  Coca Cola v. Atchison, Topeka, & Santa Fe Ry. Co, 606 F.2d 213, 222 (5th Cir. 1979).   TLC, however, argues that the case at hand involves an interpretation of a contract, which is traditionally a question of law we

---

[2] Furthermore, The Administrative Procedure Act ("APA") authorizes courts to reverse an agency's action if the agency acted arbitrarily or capriciously in adopting its interpretation by failing to give a reasonable explanation for how it reached its decision.  See  5 U.S.C. §706(2)(A) (1994).  "Arbitrary and capricious" review under the APA differs from Chevron step-two review, because it focuses on the reasonableness of the agency's decision-making processes rather than on the reasonableness of its interpretation.

review de novo.  Furthermore, TLC points  the court to an OPM letter denying coverage which indicates that OPM's decision was based on its interpretation of  the Plan.  Thus, TLC contends that OPM's actions were more akin to a contractual party than a regulatory agency.  Although Chevron leaves  open the question whether an agency's interpretation of a contract is entitled to deference, nonetheless, we need not resolve this issue today because even under de novo review, we agree with OPM's interpretation of the Plan.

Because the Plan is administered by a federal agency, the federal common law pertaining to the construction of contracts is applicable.  Todd v. AIG Life Insur. Co, 47 F.3d 1448, 1451 (5th Cir. 1995) (applying federal common law to interpret insurance plan administered under ERISA). Although we may "draw guidance from analogous state law" in ascertaining the applicable federal common law, see Brandon v. Travelers Ins. Co., 118 F.3d 1321, 1325 (5th Cir. 1991)(internal quotation omitted), "[w]e must nevertheless bear in mind that, in doing so, we may use [it] . . . only to the extent that [it] is not inconsistent with congressional policy concerns." See Todd, 47 F.3d at 1451. In construing provisions of an insurance plan, we interpret the contract language "in an ordinary and popular sense as would a person of average intelligence and experience," such that the language is given its generally accepted meaning if there is one.  Todd, 47 F.3d at 1451 n. 1 (5th Cir. 1995) (internal quotation omitted);  Jones v. Georgia

Pacific Corp., 90 F.3d 114,116 (5th Cir. 1996)(internal quotation omitted). Furthermore, a contract should be interpreted as to give meaning to all of its terms -- presuming that every provision was intended to accomplish some purpose, and that none are deemed superfluous. See Burgin v. Office of Personnel and Management, 120 F.3d 494, 498 (4th Cir. 1997). Only if the terms remain ambiguous after applying ordinary principles of contract interpretation are we compelled to apply the rule of *contra proferentem* and construe the terms strictly in favor of the insured. See Todd, 47 F.3d at 1451-52.

The contract interpretation issue in this case is whether under the Plan, a noncovered facility can submit a bill for covered services rendered by covered providers in its facility. To resolve this issue, we first look to the language of the General Exclusions subsection which states in pertinent part:

> "These exclusions apply to more than one *or* to all benefit categories. Exclusions that are primarily identified with a single benefit category are listed along with that benefit category, but may apply to other categories. Therefore, please refer to that specific benefit section as well to assure that you are aware of all benefit categories."

The plain language of this clause informs the Plan participant that the benefits categories are subject to the General Exclusions. Furthermore, exclusions specifically listed in a benefit category may be applicable to other categories. As stated above, one

of the General Exclusions listed is for services "furnished or billed by a noncovered facility." TLC does not argue that this language is ambiguous, nor do we find ambiguity. Therefore, under a plain language interpretation, the bills TLC submitted for the services rendered to Judge Gibson are not covered because TLC is a "noncovered facility."

Nonetheless, TLC contends that the "noncovered facility" general exclusion is not applicable because it submitted its claims under the "Other Medical Benefits" category as a "covered provider." It further claims that the "noncovered facility" general exclusion only applies to those benefits that the Plan specifies must be rendered in a hospital. TLC further contends that OPM's restrictive interpretation is inconsistent with other provisions of the Plan that provide procedures for "covered providers" to directly file their claims with GEHA. TLC also asserts that under OPM's restrictive interpretation, "covered providers" must render their services within the walls of "covered facilities" in order to be covered under the Plan. Thus, TLC argues that provisions under the Plan that cover "home and office visits by providers" and bills for prescription medication issued by pharmacies would be rendered superfluous because these services are not rendered in covered facilities. We do not agree with TLC's interpretation.

First, TLC's argument is flawed because TLC does not meet the Plan's definition of a "covered provider." As stated above, the term "covered provider" as defined under the Plan refers to *individual* health care providers such as doctors, dentists, nurse practitioners, occupational, physical and speech therapists. The definitions section for "covered providers" does not include "institutional providers" or facilities. Thus, TLC as a facility does not meet the Plan's "covered provider" definition. Furthermore, there is no language in the Plan that states that the "noncovered facility" general exclusion only applies to services that are provided or rendered in a hospital.

Additionally, a review of the Plan does not support TLC's contention that our plain language interpretation is inconsistent with other provisions of the Plan that provide procedures for "covered providers" to directly file their claims with GEHA. To illustrate, the "Other Medical Benefits" category lists services that are covered when provided by "covered providers." A bill submitted by an "occupational therapist" for services rendered under the "Other Medical Benefits" category would be covered under the Plan because an occupational therapist is a "covered provider." Thus, the "noncovered facility" general exclusion would not apply in this instance. However, a bill submitted by a "noncovered facility" for services rendered under the "Other Medical Benefits" category would not be covered because of the "noncovered facility" general exclusion. Thus, contrary to TLC's contention, application of the

11

"noncovered facility" general exclusion to "facilities," does not conflict with the Plan's provisions for "covered providers" to directly file their claims. Similarly, provisions under the Plan that provide coverage for "home or office visits by providers" do not conflict with the plain language of the "noncovered facility" general exclusions because these services are provided by "covered providers."[3]

Finally, TLC argues that the "Prescription Drug Benefits" category, which covers services rendered by pharmacists, conflicts with the "noncovered facility" general exclusion because these services are not rendered in "covered facilities" and pharmacists are not listed as "covered providers." Nonetheless, "when two provisions of a contract conflict, the specific trumps the general," see Millgard Corp v. McKee/Mays, 49 F.3d 1070, 1073 (5th Cir. 1995). Thus, under this well established canon of contract interpretation, the "Prescription Drug Benefits" category would trump the "noncovered facility" general exclusion even though pharmacies do not meet the definition of a "covered facility." However, we find that this canon of contract interpretation is of no avail to TLC because there is no provision in the Plan that

_____

[3] Because the General Exclusions provision states that "[t]hese exclusions apply to more than one *or* to all benefit categories" the Plan contemplates that some of the general exclusions listed, by definition, are not applicable in certain instances. For example, the "noncovered facility" general exclusion is not applicable to services furnished or billed by "covered providers." Likewise, the general exclusion for services furnished or billed by "immediate relatives and household members" is not applicable to services furnished or billed by "covered facilities."

provides coverage for "occupational, speech, and physical therapy" when furnished or billed by a "noncovered facility." Therefore, the district court erred when it overruled OPM's ruling and granted summary judgment to TLC.

CONCLUSION

We REVERSE the district court's grant of summary judgment. We REMAND the case for further proceedings consistent with this opinion.

REVERSED and REMANDED.