IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

_____

No. 99-11179
_____


PERFORMANCE PRINTING CORP.,

Plaintiff - Appellant,

vs.

UPPER DECK COMPANY,

Defendant - Appellee.


_____

No. 99-11247
_____


PERFORMANCE PRINTING CORP.,

Plaintiff - Appellee,

vs.

UPPER DECK COMPANY,

Defendant - Appellant.

---------------------------------
Appeal from the United States District Court
for the Northern District of Texas, Dallas
(3:98-CV-35-R)

January 30, 2001

Before BARKSDALE, EMILIO M. GARZA, and BENAVIDES, Circuit Judges.

BENAVIDES, Circuit Judge:[*]

This case involves a contract dispute arising out of an

_____

[*]Pursuant to 5TH CIR. R. 47.5, the Court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

agreement pursuant to which Performance Printing Corporation ("Performance") was to provide The Upper Deck Company ("Upper Deck") with printed plastic sports trading cards. After careful consideration of the arguments and evidence before us, we affirm in part and reverse in part the judgment of the district court. Because we find sufficient evidence in the record to support the jury's award and that such award was not inconsistent with the jury's other special verdict answers, we conclude that the district court erred in reducing the amount of damages awarded to Performance. We affirm the district court's grant of attorneys' fees to Performance.

FACTS

Performance is a printer located in Dallas, Texas where it operates several high-speed, multi-color printing presses. Upper Deck creates sports cards, either for sale or in conjunction with a promotion offered by another company. In 1997, Upper Deck received a contract to produce collectible hockey cards for a promotional sweepstakes conducted by McDonalds of Canada. Upper Deck then contracted with Performance to print the cards. Their agreement called for Performance to purchase the supplies necessary to produce the cards and for Upper Deck to reimburse Performance for the supplies and labor in three payments totaling $810,000. Instead of making the first scheduled payment of $250,000 on November 3, Upper Deck sent a check for $200,000.

The parties agreed that Upper Deck's underpayment would be corrected by increasing the payment due on December 8 from $250,000 to $300,000. Upper Deck failed to make this next payment and its January 5 payment of $310,000.

On January 7, 1998, Performance filed suit against Upper Deck claiming breach of contract and fraud. Upper Deck counterclaimed and raised affirmative defenses. After a seven day trial, the jury found in favor of Performance on its breach of contract claim and awarded Performance $500,000. The jury denied Performance recovery on its fraud claim against Upper Deck. The jury also found that Upper Deck had failed to prove its counterclaims/affirmative defenses of waiver, estoppel, breach of contract, negligent misrepresentation, and negligence. Upon entering judgment, the district court reduced the amount of the award to $300,000. After a subsequent hearing, the district court also awarded Performance's attorneys $124,400.67 in fees. Performance appeals the district court's reduction of the jury award. Upper Deck appeals the award of attorneys' fees to Performance.

ANALYSIS

The district court, ruling orally from the bench, reduced the jury award finding that "with respect to the damage figure of $500,000 . . . the evidence does not support that figure."[1] We

_____

[1] In their briefs and at oral argument, the parties disputed the basis of the district court's ruling. Upon ordering the transcript of

3

review the district court's decision *de novo*, "applying the same legal standard as did the trial court." *Omnitech Int'l, Inc. v. Clorox Co.*, 11 F.3d 1316, 1322-23 (5th Cir. 1994). Accordingly, judgment as a matter of law is proper after "a party has been fully heard on an issue, and there is no legally sufficient evidentiary basis for a reasonable jury to find for that party on that issue." Fed. R. Civ. P. 50(a). Under this standard, we view all of the evidence in the light most favorable to the verdict and reverse only if the evidence points "so strongly and overwhelmingly in favor of one party that the court believes that reasonable [jurors] could not arrive at any contrary conclusion." *Boeing v. Shipman*, 411 F.2d 365, 374 (5th Cir. 1969) (en banc).

We find that the jury was not unreasonable in concluding that Upper Deck (1) breached the contract by not making the agreed upon payment; and (2) still owed Performance $500,000 under the contract. From the evidence presented by the parties, it is clear that each side experienced unforeseen difficulties in performing the contract. At trial, Performance alleged that Upper Deck continually made significant changes to the design of the cards, including the addition of a separate form. Performance also showed that it fronted the entire cost of the supplies necessary for the printing. The crux of Upper Deck's

---

the hearing, we are convinced that the district court based its ruling on the sufficiency of the evidence.

4

counterclaims is that Performance delivered an inadequate number of "good," or conforming, cards. The jury's verdict reasonably reconciled the conflicting evidence and competing claims presented by the parties. Accordingly, we find the district court erred in reducing the award of damages.[2]

Because they raised the issue before the district court and raise it again here, we must address Upper Deck's assertion that the jury's response to Question 3 was inconsistent with its answers to Questions 1 and 2.[3] Its argument assumes Question 3 is merely cumulative, directing the jury to tabulate the totals discerned from its answers to Questions 1 and 2.[4] The district

---

[2] For the same reason, we reject Performance's argument urging us to upset the jury's award and find as a matter of law it is entitled to $623,900.

[3] Upper Deck also contends that the district court's question to the jury on the issue of damages (Question #3) was not correctly worded. Our Court has firmly recognized that the failure to object to the wording of a special issue prevents a party from objecting to such wording on appeal. *McDaniel v. Anheiser-Busch, Inc.*, 987 F.2d 298, 306 (5th Cir. 1993); *see* Fed. R. Civ. P. 51 ("No party may assign as error the giving . . . [of] an instruction unless that party objects thereto before the jury retires to consider its verdict . . ."). Upper Deck did not object to Question 3 during the charge conference, prior to its submission to the jury, and is therefore prevented from raising the issue for the first time before this Court.

[4] ALLEGED BREACH OF CONTRACT BY UPPER DECK
Question 1
Did Performance prove that Upper Deck breached its contract to pay $300,000 to Performance no later than December 8, 1997? Answer: Performance did prove.

Question 2
Did Performance prove that Upper Deck breached its contract to pay $310,000 to Performance in January 1998?

5

court's intent in framing Question 3 as it did is unclear. However, consistent with long standing principles of interpretation, special verdict questions should not be read as irrelevant, superfluous, or cumulative when, as here, there is a reasonable interpretation of the questions which gives each independent effect. *See Mackey v. Lanier Collection Agency & Service, Inc.*, 486 U.S. 825, 837, 108 S.Ct. 2182, 2189 (1988)(statute should not be construed to render other provisions superfluous); *Transitional Learning Community, Inc. v. United States Office of Personnel Management*, 220 F.3d 427, 431 (5th Cir.2000) ("[A] contract should be interpreted as to give meaning to all of its terms -- presuming that every provision was intended to accomplish some purpose, and that none are deemed superfluous.").

With this admonition in mind, Question 3 should be construed as a distinct question allowing the jury to fashion the appropriate damages based on all of the evidence. Under this construction, Questions 1 and 2 were designed only to establish

---

Answer: Performance did not prove.

If you answered "Performance did prove" to Question 1, and/or answered "Performance did prove" to Question 2, then answer this question. Otherwise, do not answer this question.

Question 3
What amount of money, if any, do you find to be due and unpaid by the Defendant to the Plaintiff pursuant to the contract?
Answer: $500,000.

6

liability for breach, i.e., did Upper Deck breach the contract by not making a required payment. Thus, the dollar amounts contained therein are simply descriptive of the payment and irrelevant to the damages calculation. Such a construction gives operative effect to each question and avoids rendering any question redundant or superfluous. We, therefore, conclude that Question 3 was properly read and answered by the jury as asking for the total measure of damages that would compensate Performance for Upper Deck's breach; as such, there was no inconsistency in the jury's special verdict answers.

Texas law allows a party to "recover reasonable attorney's fees from an individual or corporation, in addition to the amount of a valid claim and costs, if the claim is for . . . an oral or written contract." TEX. CIV. PRAC. & REM. CODE ANN. § 38.001 (West 1997). In its Memorandum Opinion and Order of August 23, 1999, the district court ordered Performance's attorneys to segregate their fees for the breach of contract and fraud claims, limiting Performance's recovery to fees relating to the contract claim. Upper Deck now argues that the district court should have further segregated Performance's attorneys' fees. We review the district court's award of attorneys' fees authorized by statute for abuse of discretion. *Riley v. City of Jackson, Mississippi*, 99 F.3d 757, 759 (5th Cir.1996). Upper Deck's argument relies on the premise that Performance brought two separate contract claims and

7

prevailed on one of them. This argument is wholly without merit. There was only one contract between Upper Deck and Performance. Upper Deck cannot manufacture a second contract claim because Performance alleged separate instances in which Upper Deck's conduct breached the original contract. The jury's affirmative answer to Question 1 means Performance proved its breach of contract claim and is entitled to recover attorneys' fees thereupon.

### CONCLUSION

We hold that the district court erred in reducing the amount of the jury award. We find sufficient evidence in the record to support the jury's verdict on damages. Further, the jury's special verdicts answers were not inconsistent. Regarding the disputed attorneys' fees, Performance proved its breach of contract claim and is entitled to recovery under the statute. We, therefore, affirm the district court's award of attorneys' fees and reverse the district court's judgment reducing the amount of the jury award. The case is remanded to the district court for entry of judgment consistent with this opinion.

8