# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 16-41180

United States Court of Appeals
Fifth Circuit

**FILED**
January 4, 2018

Lyle W. Cayce
Clerk

HACIENDA RECORDS, L.P.,

      Plaintiff - Appellee

HACIENDA RECORDS AND RECORDING STUDIO, INCORPORATED; LATIN AMERICAN ENTERTAINMENT, L.L.C.; RICHARD GARCIA, also known as Rick Garcia; ROLAND GARCIA, SR.,

      Counter Defendants - Appellees

v.

RUBEN RAMOS; LETICIA LETTY SALCEDO; ARTURO RENE SERRATA; HUGO CESAR GUERRERO,

      Defendants - Appellants

RUBEN GUANAJUATO,

      Counter Claimant - Appellant

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 2:14-CV-19

No. 16-41180

Before BARKSDALE, DENNIS, and CLEMENT, Circuit Judges.

PER CURIAM:*

Primarily at issue is whether Tejano artists Hugo Ruben Guanajuato, Hugo Cesar Guerrero, and Arturo Rene Serrata, were properly dismissed for lack of standing. Also at issue are Hacienda Records' being awarded both summary judgment against Ruben Ramos' breach-of-contract claim and prevailing-party status. AFFIRMED.

I.

Appellants' claims perpetuate an ongoing copyright-ownership dispute, the subject of numerous previous actions between Tejano recording companies and Tejano artists represented by David Showalter, including, Guanajuato, Guerrero, Ramos, and Serrata. *Guzman v. Hacienda Records & Recording Studio, Inc.*, 808 F.3d 1031 (5th Cir. 2015); *Tempest Publ'g, Inc. v. Hacienda Records & Recording Studio, Inc.*, 141 F. Supp. 3d 712 (S.D. Tex. 2015); *Sanchez v. Hacienda Records & Recording Studio, Inc.*, 42 F. Supp. 3d 845 (S.D. Tex. 2014); *Guerrero v. Martinez*, 2011 WL 5155831 (S.D. Tex. Oct. 27, 2011); *Guajardo v. Freddie Records, Inc.*, 2014 WL 12605052 (S.D. Tex. Dec. 12, 2014), *R. & R. adopted*, 2015 WL 12791484 (S.D. Tex. Mar. 11, 2015), *order corrected*, 2015 WL 12791487 (S.D. Tex. Apr. 27, 2015) (ruling Guanajuato, Guerrero, and Serrata lacked standing due to their irrevocable assignment of rights); *Sanchez v. Freddie Records, Inc.*, 2011 WL 3606808 (S.D. Tex. Aug. 10, 2011).

Prior to this ongoing dispute, appellants assigned and transferred various rights to their attorney, Showalter. Guanajuato, Guerrero, and

---

* Pursuant to 5th Cir. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5th Cir. R. 47.5.4.

No. 16-41180

Serrata, did so through two documents: assignments and special powers of attorney. (Ramos did not execute a special power of attorney.)

The special powers of attorney used by Guanajuato, Guerrero, and Serrata transferred to Showalter the "exclusive right to enforce any legal rights in respect of the Works and administer any and all rights and revenue received or recovered as a result of the Works, whether as the result of litigation or otherwise". Some of the disputes between the parties center on the effect of these assignments and special powers of attorney.

This action was initiated by Showalter's January 2014 demand letter to Hacienda, requesting records and documents related to works of Ramos and Serrata, and demanding Hacienda cease-and-desist for any unlicensed exploitation of their works. In response, Hacienda sought a declaratory judgment to resolve its ownership of various copyrights.

Counterclaims for copyright violations and breach of contract followed, and additional parties were joined as defendants, cross-defendants, and counter-claimants, including, Guanajuato and Guerrero. Following multiple voluntary dismissals, the counter-claimants pursued: (1) Guanajuato's claim for copyright infringement and violation of the Digital Millennium Copyright Act (DMCA); (2) Guerrero, Ramos, and Serrata's claims for breach of contract, breach of the duty of good faith and fair dealing, and attorney's fees under Texas law; (3) Guerrero and Serrata's claims for breach of fiduciary duty; and (4) appellants' request for a declaratory judgment that they are entitled to records of all revenues from the exploitation of their works.

Hacienda maintains Guanajuato, Guerrero, and Serrata (standing appellants) lack standing, based on their earlier assignment of their rights to pursue claims related to their works. Because standing was disputed in a separate action pending between the parties (*Guajardo*), the court in this

3

No. 16-41180

action took judicial notice of related documents offered as evidence in that parallel action, *Guajardo*, 2015 WL 12791487, at *1.

But, the court in this action concluded collateral estoppel did not apply because the final judgment in *Guajardo* had not been entered when, in this action, the court dismissed the standing appellants. Nonetheless, for that dismissal, the court agreed with the "reasoning and conclusions" of the *Guajardo* court's ruling on standing.

As noted, Ramos did not enter into a special power of attorney assigning Showalter the right to pursue claims related to the works, and, as also noted, asserted, *inter alia*: state-law claims for breach of contract, and breach of the duty of good faith and fair dealing. Considering the merits of Ramos' claims, the court, in awarding summary judgment to Hacienda, found evidence of a 1985 contract between Hacienda and Ramos, providing: Ramos would record and deliver two albums per year for four years; Hacienda would hold "sole and exclusive rights to all master sound records and derivatives made thereunder"; and it was to pay Ramos $1,000 prior to the first album, and further compensate him based on album-sale profits.

In opposition to Hacienda's summary-judgment motion, a 9 January 2015 declaration from Ramos stated he had not received payment under this 1985 contract. The court, however, declined to consider the declaration, based on Ramos' contradictory deposition testimony on 13 January, only four days after his declaration. In doing so, the court relied on sham-affidavit jurisprudence to conclude: "Because Ramos [] provided no valid explanation for his inability on January 13, 2015, to remember facts he swore to in his Declaration four days before, and these contradictory statements cannot be reconciled", he failed to present any summary-judgment evidence for a breach of the 1985 contract.

4

No. 16-41180

Consequently, summary judgment was awarded Hacienda against Ramos. And, the court ruled Hacienda was the "prevailing part[y]", entitling it to attorney's fees and costs.

## II.

Appellants claim the court erred by: dismissing the standing appellants; awarding summary judgment to Hacienda against Ramos; and according prevailing-party status to Hacienda. Each claim fails.

## A.

Regarding whether the court erred in dismissing the three standing appellants under Federal Rule of Civil Procedure 12(c) because of their assignments and special powers of attorney in favor of their attorney, Showalter, those appellants do not challenge the proposition that an assignor loses the ability to pursue an action after transferring the "exclusive" right to do so. Instead, they assert copyright principles, *see Prather v. Neva Paperbacks, Inc.*, 410 F.2d 698 (5th Cir. 1969), prevent application of the plain meaning of their earlier-quoted transfer of the "exclusive right to enforce any legal rights in respect of the Works".

Hacienda counters that the copyright-specific rules provide no relief in this instance, claiming assigning "any and all rights" should be interpreted according to its plain meaning, depriving the standing appellants of their ability to pursue this action. Hacienda relies on the earlier-discussed parallel case, *Guajardo*, in which the court ruled the standing appellants lacked standing, and claims they are collaterally estopped from pursuing the same standing basis they previously litigated and lost. *Guajardo*, 2015 WL 12791484 (adopting magistrate judge's recommendation, *Guajardo*, 2014 WL 12605052 at *3–6).

A Rule 12(c) motion is decided under the same standard as used for a Rule 12(b)(6) motion (failure to state a claim). *E.g., Guidry v. Am. Pub. Life*

5

No. 16-41180

*Ins. Co.*, 512 F.3d 177, 180 (5th Cir. 2007) (citing *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007)).  Therefore, "[t]he court 'accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff'", *id.* (quoting *In re Katrina Canal Breaches Litig.*, 495 F.3d at 205); and "[t]he plaintiff must plead 'enough facts to state a claim to relief that is plausible on its face'".  *Id.* (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 570 (2007)).  A Rule 12(c) motion's being granted is reviewed *de novo.  Id.*

1.

Addressed first is whether the standing appellants are precluded from re-litigating the standing issue they lost in *Guajardo*.  Dismissal based on collateral estoppel is also reviewed *de novo.  E.g.*, *Mowbray v. Cameron Cty.*, 274 F.3d 269, 281 (5th Cir. 2001) (citing *RecoverEdge L.P. v. Pentecost*, 44 F.3d 1284, 1290 (5th Cir. 1995) *abrogated on other grounds by Husky Int'l Elecs., Inc. v. Ritz*, 136 S. Ct. 1581 (2016)).  Federal law governs the preclusive effect of a federal judgment based on collateral estoppel.  *RecoverEdge L.P.*, 44 F.3d at 1290.

Issue preclusion or collateral estoppel prevents a party from litigating an *issue* it previously "litigated and lost" in another action.  *Parklane Hosiery Co., Inc. v. Shore*, 439 U.S. 322, 327 (1979).  The three elements of collateral estoppel are:  "(1) the issue at stake must be identical to the one involved in the prior action; (2) the issue must have been actually litigated in the prior action; and (3) the determination of the issue in the prior action must have been a necessary part of the *judgment* in that earlier action".  *RecoverEdge L.P.*, 44 F.3d at 1290; *see also id.* at n.12 (noting a fourth requirement—"no special circumstance that would render preclusion inappropriate or unfair"— is applicable for *offensive* non-mutual collateral estoppel) (emphasis added).  Implicit in the third element of collateral estoppel is the requirement for a final judgment; "[t]he requirement of finality applies just as strongly to collateral

estoppel as it does to res judicata". *Int'l Union of Operating Eng'rs, Local No. 714 v. Sullivan Transfer, Inc.*, 650 F.2d 669, 676 (5th Cir. 1981) (quoting J. Moore & T. Currier, 1B Moore's Federal Practice 3777 (1980) ("The essence of collateral estoppel by judgment is that some question or fact in dispute has been judicially and finally determined".)).

The doctrine of collateral estoppel "prevent[s] repetitious litigation of what is essentially the same dispute". Restatement (Second) of Judgments § 27, cmt. c. (1982). Other interests include: "conserving judicial resources, [] maintaining consistency, and [] avoiding oppression or harassment of the adverse party". *Id.* cmt. e; *see also Flores v. Edinburg Consol. Indep. Sch. Dist.*, 741 F.2d 773, 778 (5th Cir. 1984) ("promotion of judicial economy, prevention of vexatious litigation, prevention of double recovery, and promotion of the stability of decisions") (quoting *Gilbert v. Fireside Enters., Inc.*, 611 S.W.2d 869, 877 (Tex. Civ. App. 1980)).

No doubt, the bases for collateral estoppel would be well served by applying the doctrine here. As discussed *infra*, the standing appellants have filed multiple actions against various record companies through their attorney, Showalter. They vigorously litigated the standing issue in *Guajardo* and lost. They now assert the identical documents—the assignments and special powers of attorney—do not deprive them of their ability to pursue this action. A court from the same district has expended significant judicial resources to determine this exact issue, ruling Showalter alone had standing to pursue these claims. *Guajardo*, 2015 WL 12791484 at *3–6. Permitting the standing appellants to continue this action, despite this adverse ruling, would hinder judicial economy, spur vexatious litigation, and endanger stability of decisions. *Flores*, 741 F.2d at 778.

The first two elements of collateral estoppel are met. *E.g.*, *RecoverEdge L.P.*, 44 F.3d at 1290. The standing issue is identical to that in *Guajardo.* The

*Guajardo* court held the standing appellants lacked standing because of their assignments and special powers of attorney in favor of Showalter. Further, the standing issue was vigorously litigated in *Guajardo*. The parties briefed the issue expansively, the magistrate judge made a recommendation after oral argument, and the district court adopted that recommendation, after considering anew the standing appellants' assertions. *Guajardo*, 2015 WL 12791484 at *1.

Resolution of the third element (the decision on the issue was necessary to the judgment), however, is complicated by the requisite finality for purposes of collateral estoppel. There are two general approaches to the finality requirement.

The Restatement (Second) of Judgments approach requires only an order "sufficiently firm to be accorded conclusive effect". Restatement (Second) of Judgments § 13. A more rigid approach equates finality for collateral-estoppel purposes with the final-decision requirement for purposes of appeal pursuant to 28 U.S.C. § 1291.

Under that approach, if a decision is not appealable under 28 U.S.C. § 1291, it is probably not final for collateral-estoppel purposes. For example, our court held partial summary judgment lacked the finality required for collateral-estoppel purposes because, "[n]ot only is such an order not appealable, but it remains within the plenary power of the district court to revise or set aside in its sound discretion without any necessity to meet the requirements of Fed. R. Civ. P. 60(b) [providing relief from final judgment based on six delineated reasons]". *Avondale Shipyards, Inc. v. Insured Lloyd's*, 786 F.2d 1265, 1269 (5th Cir. 1986) (internal citation omitted).

Both of these approaches have been applied by our court. *Marine Shale Processors, Inc. v. United States Envtl. Prot. Agency,* 81 F.3d 1371, 1380 n.2 (5th Cir. 1996) (noting the tension in our precedent). The court in *Pye* did not

adopt the flexible approach, but cited a second circuit opinion following the Restatement approach in holding a prior judgment did have preclusive effect, even though the issue of compensation was not resolved. *Pye v. Dep't. of Transp. of State of Ga.*, 513 F.2d 290, 292 (5th Cir. 1975) (citing *Kurlan v. Comm'r*, 343 F.2d 625, 628–29 n.1 (2d Cir. 1965)).

Likewise, our court adopted the more flexible approach in *Chemetron*, stating: "the final judgment requirement is relaxed in the case of collateral estoppel"; "[f]inality in the sense of 28 U.S.C. [§] 1291 is not required for collateral estoppel"; and "the finality requirement does not necessarily demand the ministerial act of executing a judgment". *Chemetron Corp. v. Bus. Funds, Inc.*, 682 F.2d 1149, 1190–91 (5th Cir. 1982) (internal quotations and citations omitted). But, the panel decision in *Chemetron* was vacated and remanded by the Supreme Court on different grounds. 460 U.S. 1007 (1983).

On remand, another panel of our court reinstated the collateral-estoppel portion of the first-panel's opinion. 718 F.2d 725, 728 (5th Cir. 1983). Nevertheless, our court ordered rehearing *en banc*, therefore vacating the second-panel opinion, *id.* at 730, and the parties settled before rehearing, *Cycles, Ltd. v. Navistar Fin. Corp.*, 37 F.3d 1088, 1090 (5th Cir. 1994).

The *Chemetron* court's flexible approach was followed in our court's 1994 decision in *Cycles*, 37 F.3d at 1090, with the rationale in the vacated *Chemetron* opinion being cited for the proposition that "[j]udgments are final for purposes of issue preclusion when fully litigated, *even if not yet appealable*", *id.* (citing *Chemetron*, 682 F.3d at 1191) (emphasis added). The *Cycles* court cited the Restatement (Second) of Judgments, along with two other authoritative sources, in adopting the more flexible approach. *Id.* (citing Restatement (Second) of Judgments § 13; 18 Charles A. Wright *et al.*, Federal Practice and Procedure § 4434, at 321 (1981); 1B James W. Moore *et al.*, Moore's Federal Practice ¶ 0.416[3.-1] (2d ed. 1993)).

9

No. 16-41180

Except for *Chemetron* and *Cycles*, however, our court has interpreted the finality requirement strictly.  While our court has stopped short of requiring a judgment be appealable to be "final" for collateral-estoppel purposes, it has repeatedly stressed the correlation between appealability under 28 U.S.C. § 1291 and finality for collateral estoppel.

In *Avondale*, our court not only noted *Chemetron* had no precedential effect, but also disagreed with the flexible interpretation of finality.  *Avondale*, 786 F.2d at 1269–73  (disagreeing with *Sherman v. Jacobson,* 247 F. Supp. 261, 268–69 (S.D.N.Y. 1965)); *J.R. Clearwater Inc. v. Ashland Chem. Co.*, 93 F.3d 176, 179 n.2 (5th Cir. 1996) (stating *Avondale* "declined to adopt this more flexible notion of finality").  The Restatement approach, the *Avondale* court admonished, "seems to render appealability almost irrelevant . . . . [and] the result is either that nearly every interlocutory ruling will be issue preclusive, or that it will be almost impossible to determine in advance which will be preclusive and which not".  *Avondale*, 786 F.2d at 1271.

While acknowledging the Restatement's synthesis of decisions adopting the flexible approach, the *Avondale* court stated:  "[T]he most prominent [of these] decisions have involved issues that were resolved by appeal prior to final judgment in the first action".  *Id.* at 1270 (internal citations omitted).  Finding no "federal appellate decision which has applied preclusion to a prior nonfinal ruling as to which appellate review was unavailable", the court "decline[d] to depart from [the] previously stated rule that an order granting partial summary judgment 'has no res judicata or collateral estoppel effect'".  *Id.* at 1270, 1272 (quoting *Golman v. Tesoro Drilling Corp.*, 700 F.2d 249, 253 (5th Cir. 1983) (applying Texas law of collateral estoppel)).

With the exception of *Cycles*, our court has consistently followed the strict approach to finality, linking the availability of appeal for the prior decision with finality for collateral-estoppel purposes.  *Baros v. Tex. Mexican*

No. 16-41180

*Ry. Co.*, 400 F.3d 228, 233 (5th Cir. 2005) (preliminary injunction not sufficiently final); *contra RecoverEdge*, 44 F.3d at 1295 (stating in *dicta*: "Furthermore, a final judgment is not a prerequisite for issue preclusion when a jury has rendered a conclusive verdict") (citing Restatement (Second) of Judgments § 13)); *Stripling v. Jordan Prod. Co., LLC*, 234 F.3d 863, 867–68 (5th Cir. 2000) (magistrate judge's order not sufficiently final); *Hughes v. Santa Fe Int'l Corp.*, 847 F.2d 239, 242 (5th Cir. 1988) (consent judgment entered after a jury finding not final for collateral-estoppel purposes); *J.R. Clearwater*, 93 F.3d at 179 n.2 (denial of class certification not sufficiently final); *Winters v. Diamond Shamrock Chem. Co.*, 149 F.3d 387, 395–96 (5th Cir. 1998) (remand order under 28 U.S.C. § 1447(d) (post-removal order remanding action to state court not reviewable) not sufficiently final); *Avondale*, 786 F.2d at 1269–73. The *Winters* court declined to invoke a bright-line rule that non-appealable judgments lacked sufficient finality, but stressed the importance of appellate review in resolving the issue, noting "the availability of review is of paramount importance to the issue of preclusion". *Winters*, 149 F.3d at 395–96.

Like our precedent, the district court in this action was reluctant to apply collateral estoppel because the judgment in *Guajardo* was not yet final for 28 U.S.C. § 1291 purposes when it ruled on standing. The *Guajardo* court dismissed the standing appellants' claims on 11 March 2015, *Guajardo*, 2015 WL 12791484, but final judgment was not entered until 28 March 2016.

In this action, the court dismissed the standing appellants' claims on 30 September 2015, before the March 2016 *Guajardo* judgment. *Hacienda Records, LP v. Ramos*, 2015 WL 5732558 at *4 (S.D. Tex. Sept. 30, 2015). In doing so, although the court ruled "the doctrine of collateral estoppel does not apply here", "the [c]ourt nonetheless agree[d] with the reasoning and conclusions reached [in] *Guajardo*". *Id.*

11

No. 16-41180

Because the district court relied on the reasoning in *Guajardo*, rather than applying collateral estoppel, and because, in our *de novo* review, we also agree with that reasoning, we need not decide whether the *Guajardo* dismissal for lack of standing was sufficiently final for collateral-estoppel purposes in this action. Instead, we turn to whether the standing appellants' assignments and special powers of attorney deprived them of standing.

2.

As discussed *supra*, the standing appellants each executed two documents bearing on standing: an assignment and a special power of attorney, both in favor of their attorney, Showalter. The assignments gave Showalter

> a one-half undivided interest in our said cause of action and said interest in our Works including copyrights and renewals thereof and any claims and causes of action in the Works as well as any and all property, money and the gross value of any benefit or consideration of any nature that is recovered in respect of the Works as well as royalties, [Broadcast Music Inc.] payments or revenue from any source.

The more-expansive special powers of attorney irrevocably transferred to Showalter an

> exclusive right to enforce any legal rights in respect of the Works and administer any and all rights and revenue received or recovered as a result of the Works, whether as the result of litigation or otherwise . . . includ[ing] the exclusive right to negotiate, issue licenses, collect revenue and enforce rights in respect of the Works.

Hacienda asserts these documents compel dismissal of the standing appellants.

Instead of contesting the general rule that an individual who transfers his right to sue no longer has a right to do so, the standing appellants claim their assignments and special powers of attorney only transferred *future*

12

claims.  They cite, *inter alia*, our court's opinion in *Prather* for the proposition that an assignment of claims requires specific language to transfer an interest in *prior* accrued claims.  *Prather*, 410 F.2d at 700.  Hacienda responds that *Prather* is inapplicable because the appellants, except Guanajuato, voluntarily dismissed their copyright claims under Rule 41(b).  For the reasons that follow, we agree the rule from *Prather* applies only to copyright claims under 17 U.S.C. §§ 106 and 501, and the standing appellants, as assignors, are precluded from suing on their state-law claims as a matter of Texas law.  *Advanced Nano Coatings, Inc. v. Hanafin*, 478 F. App'x 838, 843 (5th Cir. 2012) (quoting *River Consulting, Inc. v. Sullivan*, 848 S.W.2d 165, 169 (Tex. App.—Houston [1st Dist.] 1992, writ denied), *overruled on other grounds by Formosa Plastics Corp. USA v. Presidio Eng'rs & Contractors, Inc.*, 960 S.W.2d 41 (Tex. 1998)).

To assess Hacienda's position, we must determine which claims were not voluntarily dismissed when the district court dismissed the standing appellants in September 2015, because the rule from *Prather*, discussed *infra*, applies only to copyright claims.  *See Prather*, 410 F.2d at 698 (the first sentence states: "This is a copyright infringement case").  Guerrero and Serrata dismissed, *inter alia*, their claims for copyright infringement and retained only state-law claims.  Guanajuato, on the other hand, dismissed all state-law claims, but "retain[ed] his claims for copyright infringement, [and] under the DMCA".

a.

As stated above, as of 30 September 2015, when the court dismissed the standing appellants' claims, Guerrero and Serrata retained only state-law claims.  We first address whether they may pursue those claims despite their assignments and special powers of attorney.

The general rule is that, "[u]nder Texas law, once a cause of action has been assigned to another person, the assignor is precluded from bringing suit

'unless the assignor has retained some right or interest therein'". *Advanced Nano Coatings, Inc.*, 478 F. App'x at 843 (quoting *River Consulting, Inc.*, 848 S.W.2d at 169). Whether the documents transferred all rights is a matter of contract interpretation. When interpreting contract provisions, such as the assignments and special powers of attorney here, the court should attempt "to give effect to the intentions of the parties". *In re Isbell Records, Inc.*, 586 F.3d 334, 337 (5th Cir. 2009) (citing *Reliant Energy Servs., Inc. v. Enron Can. Corp.*, 349 F.3d 816, 822 (5th Cir. 2003)). If unambiguous, the terms of the contract "will be given their plain meaning and will be enforced as written". *Id.*

At the commencement of this action, the standing appellants could no longer pursue claims arising from the works because they had transferred to Showalter the "exclusive" right to pursue them. As discussed *infra*, giving Showalter the "exclusive right to enforce any legal rights in respect of the Works" meant only Showalter could enforce those rights. Oxford Dictionary (online version), https://premium.oxforddictionaries.com/us/definition/american_english/exclusive ("Exclusive" means "Restricted or limited to the person, group, or area concerned"). It follows, therefore, the court did not err in dismissing the state-law claims, unless there is some specific rule which prevents application of the plain meaning of the assignments and special powers of attorney.

As noted, instead of challenging the general rule that an assignor loses the ability to sue after transferring his entire interest, Guerrero and Serrata claim this court's decision in *Prather* prevents application of the general rule. *Prather*, 410 F.2d at 700. That decision requires more specific language in contracts purporting to "transfer[] causes of action for prior [copyright] infringements". *Id.*

Even assuming the assignments and special powers of attorney were not specific enough, *Prather* provides no aid to Guerrero and Serrata's state-law

claims because the rule applies only to copyright claims. An inspection of the opinion clarifies this result, because, *inter alia*: the first line states "[t]his is a copyright infringement case"; the court states the issue is "the effectiveness of an assignment of accrued causes of action for copyright infringement"; and the court cites authoritative sources on copyright law in crafting its rule. *Id.* at 698–700 (citing Horace G. Ball, The Law of Copyright and Literary Property 543 (1944)). Because *Prather* provides no relief from the plain meaning of the assignments and special powers of attorney, as it relates to the state-law claims, the court did not err in ruling the documents deprived Guerrero and Serrata of their right to pursue those claims.

b.

Next at issue is whether *Prather* allows Guanajuato to maintain his claim for copyright infringement. As stated *supra*, Guanajuato was the only appellant who had retained a copyright claim when the district court ruled in September 2015; and, as discussed, the *Prather* rule applies only to copyright claims.

The *Prather* court ruled: "Unless the assignment of copyright contains language explicitly transferring causes of action for prior infringements, the assignee cannot maintain a suit for infringements which happened before the effective date of the assignment". *Id.* at 700 (internal citation omitted). Nevertheless, that court also ruled: "All that is required is that the contract [of assignment] cover *in no uncertain terms* choses in action for past, prior, accrued damages". *Id.* (emphasis added).

While *Prather* requires a more specific assignment of prior copyright infringements, this issue is still one of contract interpretation, and we apply the same contract-interpretation principles discussed *supra*. The court should attempt "to give effect to the intentions of the parties", *In re Isbell Records, Inc.*, 586 F.3d at 337 (internal citation omitted); and, if unambiguous, the

terms of the contract "will be given their plain meaning and will be enforced as written", and "[a] contract should be interpreted as to give meaning to all of its terms—presuming that every provision was intended to accomplish some purpose, and that none are deemed superfluous", *Id.* (quoting *Transitional Learning Cmty. at Galveston, Inc. v. U.S. Office of Pers. Mgmt.*, 220 F.3d 427, 431 (5th Cir. 2000)).

At issue in *Isbell Records* was whether an assignment divested the assignor of its right to pursue copyright-infringement claims. *Id.* The assignment in *Isbell Records* contained two seemingly inconsistent clauses; the first granted "fifty percent (50%) of [its] interest now owned or subsequently procured in the universe-wide copyright in and to the . . . musical composition", and the second assigned "all of the universe-wide right, title, and interest . . . including all claims for infringement of the copyrights whether now or hereafter existing, for the maximum terms of copyright". *Id.*

Our court ruled that the district court erred by "focusing on the phrase 'all claims for infringement of the copyrights,' [and] conclud[ing] that the plain language of the contract deprives [plaintiff] of any right to pursue copyright infringement claims". *Id.* "This interpretation," our court stated, "ignores the language of the clause as a whole and renders the contract contradictory". *Id.* Because, when read properly, the second clause "clarifie[d] that the 50% share [was] a full share, rather than an income, participation, royalty, or some other limited share in the copyright", "the district court erred when it held that [plaintiff] lacked standing to pursue its claims". *Id.* at 338.

*Isbell Records* is distinguishable. Instead of two clauses, the transfer at hand contains two separate agreements for each of the standing appellants: an assignment and a special power of attorney. Instead of "clarif[ying] that the 50% share is a full share", the special power of attorney gave Showalter the "*exclusive* right to enforce *any* legal rights in respect to the Works".

(Emphasis added.)    By signing the agreement, the standing appellants transferred their ability to "enforce . . . and administer *any and all rights* and revenue . . . includ[ing] the *exclusive* right to negotiate, issue licenses, collect revenue and *enforce rights* in respect of the Works".  (Emphasis added.)

The plain meaning of these clauses renders the standing appellants unable to "enforce . . . any and all rights", which includes rights to pursue an action for copyright, because they gave Showalter the "exclusive" ability to enforce those rights.  As the court stated in *Prather*, "[a]ll that is required is that the contract [of assignment] cover *in no uncertain terms* choses in action for past, prior, accrued damages".  *Prather*, 410 F.2d at 700 (emphasis added).  The plain meaning of the clause granting Showalter the "*exclusive* right to enforce *any* legal rights in respect to the Works" means Showalter, not the standing appellants, was the *only* person capable of enforcing all the artists' rights in this action.  (Emphasis added.)

Certainly, the standing appellants' copyright rights are included in the inclusive term "any and all" that Showalter alone was given the "exclusive right to enforce".  It would be nonsensical to interpret "all rights" to mean "all rights except those rights related to prior copyright infringements".  Therefore, the broad and inclusive language in the assignments and special powers of attorney, created before this action, was sufficient under *Prather* to deprive the standing appellants of their ability to pursue this action.  Accordingly, the district court did not err in dismissing, for lack of standing, Guanajuato's copyright-infringement claim.

## B.

Ramos' challenge to the summary judgment awarded Hacienda against his contract claims is reviewed *de novo*.  *E.g.*, *United States v. Lawrence*, 276 F.3d 193, 195 (5th Cir. 2001).  Summary judgment was granted because Ramos undermined his contract claims by repeatedly disavowing that any contract

existed; and, even assuming one did exist, Ramos failed to offer evidence of breach.

Summary judgment is proper where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law". Fed. R. Civ. P. 56(a). The court considers the record as a whole, and draws all justifiable inferences in favor of the non-movant. *Smith v. Reg'l Transit Auth.*, 827 F.3d 412, 417 (5th Cir. 2016). But the non-movant bears "the burden of demonstrating by competent summary judgment proof that there is [a genuine dispute] of material fact warranting trial". *Lindsey v. Sears Roebuck & Co.*, 16 F.3d 616, 618 (5th Cir. 1994) (internal citations omitted).

In considering the summary-judgment record, and although the court may not weigh the evidence or make credibility determinations, it must, of course, decide what evidence may be considered. *E.g.*, *Christophersen v. Allied–Signal Corp.*, 939 F.2d 1106, 1109 (5th Cir. 1991) ("we review the trial court's evidentiary rulings, which define the summary judgment record, and we give these rulings their due deference"), *abrogated on other grounds by Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993). The court's evidentiary rulings regarding the competency of evidence are reviewed for abuse of discretion. *E.g.*, *Guillory v. Domtar Indus. Inc.*, 95 F.3d 1320, 1329 (5th Cir. 1996); *see also Yeager v. Bowlin*, 693 F.3d 1076, 1079 (9th Cir. 2012) ("a district court's decision whether to apply the sham affidavit rule should be reviewed for abuse of discretion").

Ramos contends the court's concluding he "failed to offer competent summary judgment evidence that Hacienda Records breached" the contract is incorrect. He asserts he provided ample evidence of breach, and claims some of that evidence was improperly excluded based on the sham-affidavit rule.

That rule provides a "party may not manufacture a dispute of fact merely to defeat a motion for summary judgment". *Doe ex rel. Doe v. Dallas Indep. Sch. Dist.*, 220 F.3d 380, 386 (5th Cir. 2000). This is because, if "a party who has been examined at length on deposition could raise an issue of fact simply by submitting an affidavit contradicting his own prior testimony", "the utility of summary judgment as a procedure for screening out sham issues of fact" would be greatly diminished. *Id.* (quoting *Perma Research & Dev. Co. v. Singer Co.*, 410 F.2d 572, 578 (2d Cir. 1969)).

As noted *supra*, the district court refused to consider Ramos' 9 January 2015 declaration "[b]ecause [he] has provided no valid explanation for his inability [in his later deposition] on January 13, 2015, to remember facts he swore to in his Declaration four days before, and these contradictory statements cannot be reconciled". Ramos contends the sham-affidavit rule does not apply for two reasons: (1) his declaration was executed before, rather than after, his deposition; and (2) his declaration and deposition testimony are consistent.

First, Ramos' suggestion that only an affidavit that comes after testimony can be a sham is misguided. It is the competency, rather than timing, of evidence with which the sham-affidavit rule is concerned. As the third circuit explained, "no principle [] cabins sham affidavits to a particular sequence . . . . Indeed, cross-examining the affiant in a later deposition seems the better way to find the flaws in a bogus affidavit". *In re CitX Corp., Inc.*, 448 F.3d 672, 679–81 (3d Cir. 2006). Therefore, so long as inconsistent statements were "made by [Ramos] the deponent and [Ramos] the affiant", the court may refuse to consider his declaration as competent evidence. *E.g.*, *Palazzo ex rel. Delmage v. Corio*, 232 F.3d 38, 43–44 (2d Cir. 2000).

Second, inconsistencies abound between Ramos' declaration and deposition testimony. For example, Ramos the declarant stated he never

No. 16-41180

received the $1,000 advance promised in the contract, but Ramos the deponent admitted he probably received the advance, although he could not remember. Ramos the declarant stated Hacienda "never paid [him] any monies or royalties", but Ramos the deponent admitted he couldn't remember whether he had been paid.

Memories, of course, may fade over time; but, that is a far cry from Ramos, at his deposition, being unable to recall many of the events he had stated as fact in his declaration, just four days prior. Ramos is not entitled to use a declaration "that impeaches, without explanation, sworn testimony" to defeat summary judgment. *S.W.S. Erectors, Inc. v. Infax, Inc.*, 72 F.3d 489, 495 (5th Cir. 1996). The court did not abuse it's discretion by not considering the declaration in ruling on the summary-judgment motion.

Without Ramos' January 2015 declaration, the only evidence related to his contract claims included: (1) his September 2014 interrogatory response, stating he was "not a party to any contracts"; (2) his December 2014 interrogatory response, stating he "disavow[ed] any such contracts"; (3) his January 2015 deposition, in which he admitted probably receiving his advance check and could not recall whether he had received any further payments; and (4) the 1985 contract. As the court concluded, Ramos "failed to offer competent summary judgment evidence supporting breach", and "Hacienda Records is entitled to judgment as a matter of law on Ramos' breach of contract claim".

C.

Appellants claim the court erred by ruling Hacienda is entitled to attorney's fees and costs as the "prevailing part[y] on all claims". In challenging that ruling, appellants assert they are the prevailing party as to the 400 works voluntarily dismissed by Hacienda, and the accounting they obtained through discovery.

20

No. 16-41180

Although, following pleading amendments and voluntary dismissals by the parties, Hacienda reduced its claims, it prevailed on all works considered by the court. But, even though appellants did not prevail on any works considered by the court, they contend they prevailed on all those works not considered by the court, and, accordingly, claim prevailing-party status.

Texas law controls the award of fees in this instance, *Mathis v. Exxon Corp.*, 302 F.3d 448, 461 (5th Cir. 2002), and provides for an award of reasonable fees in contract actions, *id.* at 462 (citing Tex. Civ. Prac. & Rem. Code Ann. § 38.001). This fees award is mandatory for the prevailing party in a breach-of-contract action, who presents proof of reasonable fees. *DP Sols., Inc. v. Rollins, Inc.*, 353 F.3d 421, 433 (5th Cir. 2003) (citing *Mathis*, 302 F.3d at 462).

A fees award is reviewed for abuse of discretion. *Studiengesellschaft Kohle mbH v. Eastman Kodak Co.*, 713 F.2d 128, 131 (5th Cir. 1983) (citing *Kinnear-Weed Corp. v. Humble Oil & Ref. Co.*, 441 F.2d 631 (5th Cir.), *cert. denied,* 404 U.S. 941 (1971)). And, the award may be justified even when a party did not prevail on every issue. *Id.* (citing *United States v. Mitchell*, 580 F.2d 789, 793 (5th Cir. 1978); 10 C. Wright et al., Federal Practice and Procedure § 2667 at 180–81)). Moreover, prevailing-party status is not conferred through a party's voluntary dismissal without prejudice. *Alief Indep. Sch. Dist. v. C.C. ex rel. Kenneth C.*, 655 F.3d 412, 418 (5th Cir. 2011). (Contrary to the position taken in the concurring opinion, the overarching issue for all settled claims involved contract disputes; state law applies because the fees were awarded for breach of contract; the prevailing-party status was decided under state law because Texas awards attorney's fees to the party prevailing on a contract claim; and the standard of review for the decision on prevailing-party status is inconsistent, with some Texas courts using abuse of

21

No. 16-41180

discretion, and others, *de novo.  N. Star Water Logic, LLC v. Ecolotron, Inc.*, 486 S.W.3d 102, 105 (Tex. App. 2016).)

Conversely, an enforceable judgment on the merits will confer prevailing-party status. *Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Human Res.*, 532 U.S. 598, 604 (2001).  Accordingly, a court does not abuse its discretion in awarding fees to the "prevailing party [who] obtains judgment on even a fraction of the claims advanced".  *Mitchell*, 580 F.2d at 793.

The court entered a final judgment in favor of Hacienda, and the earlier voluntary dismissals without prejudice did not confer prevailing-party status on appellants. *Alief Indep. Sch. Dist.*, 655 F.3d at 418.  Therefore, because the party receiving the favorable judgment is appropriately considered the "prevailing party", the court did not abuse its discretion in according Hacienda prevailing-party status. *Republic Tobacco Co. v. N. Atl. Trading Co. Inc.*, 481 F.3d 442, 446 (7th Cir. 2007).

### III.

For the foregoing reasons, the judgment is AFFIRMED.

No. 16-41180

JAMES L. DENNIS, Circuit Judge, concurring in the judgment:

Although I agree with the majority opinion's conclusion that the district court's judgment should be affirmed, I respectfully disagree in part with the rationale for that conclusion, assign substitute reasons, and concur in the judgment.

As the majority opinion states, the judgment in *Guajardo v. Freddie Records, Inc.*, No. H-10-cv-2024, 2015 WL 12791484 (S.D. Tex. Mar. 11, 2015), was not final at the time of the district court's order dismissing some of the appellants for lack of standing.  It is undisputed, however, that *Guajardo* subsequently became final and appealable well before this appeal.  The appellants, in fact, actually appealed *Guajardo* before ultimately moving to dismiss that appeal.  Even under the "more rigid approach" that the majority opinion endorses, then, *Guajardo* is now a final judgment with preclusive effect.  *See United States v. Munsingwear, Inc.*, 340 U.S. 36, 39–41 (1950) (holding that the final judgment of a district court retains preclusive effect after appeal when that appeal is dismissed without vacating the judgment below).  Accordingly, because the issue at stake in the instant appeal is identical to that in *Guajardo*, it was actually litigated in that case, and its determination was a necessary part of *Guajardo*'s now-final judgment, I would hold that the appellants are collaterally estopped from asserting standing and decline to reach the merits of the issue.  *See RecoverEdge L.P. v. Pentecost*, 44 F.3d 1284, 1290 (5th Cir. 1995).

Additionally, though I concur in affirming the district court's prevailing-party determination, I disagree with the majority opinion's conclusion that state law governs this question.  Because appellants apparently dispute the assessment of prevailing-party status for the appellees' copyright claims, not any contract claims, federal law should apply to our review.  *Cf. Mathis v. Exxon Corp.*, 302 F.3d 448, 461 (5th Cir. 2002) ("A fee award is governed by the

same law that serves as the rule of decision for the substantive issues in the case."). Further, though the majority opinion correctly states that an award of fees is generally reviewed for an abuse of discretion, "whether a party is a prevailing party 'is a legal question subject to *de novo* review.'" *El Paso Indep. Sch. Dist. v. Richard R.*, 591 F.3d 417, 422–23 (5th Cir. 2009) (quoting *Bailey v. Mississippi*, 407 F.3d 684, 687 (5th Cir. 2005)). Applying this standard, I conclude that the district court did not err in according prevailing-party status to the appellees for substantially the reasons stated by the majority opinion.